**DAYTON v. McGRANERY, Atty. Gen.**

**No. 11443.**

United States Court of Appeals District of Columbia Circuit.

Submitted Nov. 24, 1952.

Decided Jan. 15, 1953.

712

Dexter C. Dayton, pro se, submitted on the brief for appellant.

William E. Kirk, Jr., Asst. U. S. Atty., Charles M. Irelan, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., submitted on the brief for appellee.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant Dayton is a prisoner in the penitentiary at Leavenworth. He sues the Attorney General for an injunction. He alleges that he wrote and deposited for mailing with officials at the penitentiary letters addressed to a young lady who is the daughter of the superintendent of another penal institution, and that these officials failed and refused to mail the letters. He says that, while the regulations of the Bureau of Prisons purport to be fair and impartial, they are administered "with an evil eye and with an unequal hand", "with an unequal and oppressive mind". He says that no matter of his own safekeeping or protection of the public is or can be involved in his writing letters to the young lady, even though she be the daughter of a prison official.

In the second count of his complaint appellant says that he was permitted by an official of the penitentiary to read a letter purportedly written by the young lady to whom his own letters had been addressed, that he believes that this letter was in fact not written by the young lady but by a prison official (her father), and further that the statements in the letter were false and malicious. He further says that other letters, allegedly written by the father of the young lady and containing similar false and malicious allegations, have been filed in the institutional record of the complainant. He says the letters falsely and maliciously hold him out to be a person who "is living in a little dream world regarding that girl", stating that he does not know her, has caught only glimpses of her on rare occasions, and hence is subject to psychoneurotic delusions regarding her.

The prayers of the complaint are that the Attorney General and his agents be required to permit the complainant to communicate with the young lady by sending and receiving mail, and that they be required to remove from the prison and parole records of the complainant the letter allegedly written by the young lady and all the letters allegedly written by her father.

The District Court dismissed the action on the ground that the complaint failed to state a cause of action for which it could grant relief. We agree with that conclusion.

█ The Attorney General and other officers in the line of authority over penal institutions do not have the power arbitrarily to deny a prisoner communication with the outside world, but they do have wide powers of control over such communication. We think that the letters here involved, written by complainant, fall within that control, even though we recognize that to him the interruption of these efforts to communicate with the young lady may

seem the ultimate essence of an arbitrary invasion of rights.

It appears that the leading authority upon the point is a decision by the United States Court of Appeals for the Tenth Circuit.[1] In that case this same young man, Dexter Dayton, sought an injunction to prevent the warden of the penitentiary from refusing to mail letters addressed to a young lady in West Virginia. The court there held that it had no power to superintend through injunctive processes the discipline of a federal penitentiary. The young lady in the present case is a resident of Virginia and the defendant is the Attorney General, but otherwise the cases are identical.

■ In respect to the other prayer in the complaint, that the prison officials be required to eliminate certain letters from the files, appellant makes two contentions. He says that in the event he should apply for parole or pardon the letters, false and malicious, would be damaging data. But that injury is prospective and speculative, and, in any event, the truth or falsity of any material which might be presented to the parole or pardon authorities would be for those authorities to measure. Appellant next says that the letters have already injured his reputation and credit and have brought him into public hatred, contempt, scandal and ridicule. If the damage he thus describes is a wrong, it sounds in libel, not in the present cause. Moreover, in circumstances such as those here presented, the courts have no inherent power of disposition over internal documentary data of the executive branch of the Government, and Congress has conferred no such power upon them. Congress has enacted elaborate statutory provisions relating to the disposition, safekeeping, and possible destruction of Government "records".[2] The statute defines "records" to include all documentary material received by any agency of the Government in pursuance of federal law or in connection with the transaction of public business, appropriate for preser-

vation as evidence of the policies, decisions or other activities of the Government or because of the informational value of data contained therein. The statute also provides that the procedures therein prescribed are exclusive and that no records of the Government shall be "alienated or destroyed" except in accordance with its provisions. The papers involved in the case before us were letters signed by known persons, addressed to and received by the warden of the penitentiary concerning an inmate of that penitentiary. The relief here prayed is a mandatory direction from the court for the destruction of papers. That procedure would not fall within the statute, above mentioned, which governs such matters.

The judgment of the District Court is Affirmed.

1. Dayton v. Hunter, 10 Cir. 1949, 176 F. 2d 108, certiorari denied, 1949, 338 U.S. 888, 70 S.Ct. 184, 94 L.Ed. 545.

2. 57 Stat. 380 (1943), as amended, 44 U. S.C.A. §§ 366–380.