**HEUER et al. v. BASIN PARK HOTEL AND RESORT et al.**

**Civ. A. No. 323.**

United States District Court
W. D. Arkansas, Harrison Division.

Aug. 12, 1953.

---

G. Byron Dobbs, Fort Smith, Ark., Samuel W. Kipnis, Chicago, Ill., for plaintiffs.

Willis & Walker, Harrison, Ark., for defendants.

JOHN E. MILLER, District Judge.

On November 15, 1951, plaintiffs filed their complaint against the defendant and alleged that he had been guilty of unfair competition; these allegations will be set out more fully hereinafter.

The defendant, on December 7, 1951, filed his answer denying that he had been guilty of unfair competition. At the same time the defendant filed his counterclaim against the plaintiffs and alleged that they had been guilty of unfair competition and had slandered and disparaged defendant's property.

Subsequently plaintiffs filed a motion for a more definite statement with reference to the slander portion of defendant's counterclaim, and on January 9, 1952, the Court entered an order requiring a more definite statement.

On February 16, 1952, defendant filed his amendment to the counterclaim, and on March 14, 1952, plaintiffs filed their reply to said counterclaim as amended.

The case was set for trial on March 11, 1953, but, upon learning that the defendant intended to introduce evidence of slander-ous statements other than those alleged in the counterclaim, the Court granted the plaintiffs a continuance, and, in order to simplify the issues for trial, a pre-trial conference was conducted and the following order was entered by the Court:

"On this March 11, 1953, the date set for the trial of this cause but prior to the calling of the case for trial, a pre-trial conference was had, the plaintiffs appearing by Messrs. G. Byron Dobbs, Merle Shouse and Samuel W. Kipnis, their attorneys, and the defendant appearing by Messrs. Willis & Walker, his attorneys. A discussion of the issues for trial in this case was had and upon agreement of the parties the court finds:

"1. That the plaintiffs' cause of action is based upon a claim of unfair competition by the defendant in that the defendant in 1951 copied, in substance, advertising matter used by plaintiffs in the promotion of their business under the name of Happiness Tours and that the plaintiffs suffered damages to their business by reason of such unfair competition and by reason of the appropriation by defendant of such advertising matter as alleged and are entitled to recover damages and injunctive relief as prayed for in their complaint against defendant's use of advertising material that had acquired a secondary meaning.

"2. The defendant denies that he copied or otherwise appropriated to his use the advertising folders and material of plaintiffs or that the plaintiffs had originated any advertising folders and material, and, contends that the folders or advertising matter which plaintiffs contend was appropriated by him was in fact appropriated and used by plaintiffs without permission and illegally from prior folders and advertising matter originated by defendant and that defendant in no wise by acts or conduct expressly or impliedly gave plaintiffs permission to use the advertising matter which he contends that plaintiffs had used in their folders and advertising matter and that by reason of said alleged acts on the part of the plaintiffs, defendant has been damaged in his business which is that of the operation of the Basin Park Hotel, and that said advertising material and folders were his own

and that the plaintiffs should be enjoined from using any such material in their travel folder which had acquired a secondary meaning in the promotion of their business in the conduct of travel tours.

"3. That the defendant contends that the plaintiffs subsequent to December 7, 1950 uttered and published of and concerning the hotel which he operated, to-wit, the Basin Park Hotel at Eureka Springs, Arkansas, slanderous and disparaging statements, to-wit: 'The Basin Park was an old hotel and unsafe to stay in; that it was a broken down tenement house with no modern conveniences and very poor rooms and in the tenement section of town; that the Basin Park Hotel is an old dilapidated tenement house and in the lower part of Eureka Springs and that the Crescent Hotel is a large beautiful castle on which the owners have spent $150,000 to remodel; that the Basin Park Hotel is no longer in business; that the Basin Park Hotel was a broken down tenement house in the old part of town where several years ago the colored help for the Crescent Hotel was kept and that it was not a safe place for women to go—' and that defendant has been damaged by said utterances.

"And it appearing to the court that the contention of the defendant in reference to the claim for damages for alleged slanderous and disparaging statements have not been clearly and sufficiently alleged in his counterclaim, permission is granted the defendant to amend, within 30 days, his counterclaim by alleging specifically the dates and places of the utterances of the alleged slanderous and disparaging statements and the defendant is ordered and directed to furnish plaintiffs with names and addresses, so far as can be ascertained, of the persons to whom he claims the slanderous and disparaging statements were made, and the names or physical descriptions of the persons making such statements.

"It is further directed and ordered that the plaintiffs furnish to the defendant the names and addresses, so far as is possible to ascertain, of the employees in their business office in Chicago during the time from December 7, 1950 to the date of this order.

"The defendant is granted permission to further amend, within 30 days, his counterclaim to pray for an injunction enjoining plaintiffs from engaging in unfair competition with him by the use of advertising folders or matter which may be found to have been originated by the defendant and which had acquired a secondary meaning and which were being used without his express or implied permission.

"It is further ordered that the trial of this case upon its merits be continued until the next session of the court."

Following the entry of the above order by the Court, the defendant on April 8, 1953, filed his "Second Amendment to Defendant's Counterclaim" in which he alleged that agents of the plaintiffs made certain disparaging statements, concerning his hotel, to prospective customers thereof as well as to the defendant himself. The defendant prayed that plaintiffs be enjoined from disparaging his hotel and from using or distributing circulars or advertising material which he alleges were originated by him and had acquired a secondary meaning.

On April 25, 1953, plaintiffs filed a "Motion to Dismiss and Strike Defendant's Second Amendment to the Counterclaim and for a Trial by the Court of the Equitable Issues Herein," and on July 24, 1953, plaintiffs filed a motion for summary judgment in their favor on both the complaint and the counterclaim. The attorneys for the respective parties have filed briefs in support of and in opposition to the motions, and said motions are now before the Court for disposition.

The Court will first consider the plaintiffs' motion to dismiss and strike defendant's second amendment to the counterclaim and for a trial by the Court of the equitable issues. With respect to this motion, the plaintiffs contend that the second amendment does not comply with the pretrial order of the Court in that defendant has added new alleged disparaging statements, contrary to the Court's order, and has prayed for injunctive relief "wholly different from that permitted by the Court"; and that a court will not enjoin the publication of disparaging or defama-

tory statements. Plaintiffs also contend that the alleged causes of action for unfair competition are equitable in nature and should be determined by the Court without the intervention of a jury. The defendant, on the other hand, contends that he has complied with the order of the Court, but he makes no contention with respect to the equitable nature of the unfair competition claims or to the right of injunctive relief against the uttering of disparaging statements.

In order to ascertain whether the second amendment to the counterclaim conforms with the Court's pre-trial order, it will be necessary to compare the counterclaim as it existed at the time of the order with the counterclaim as it appears subsequent to the second amendment. The original counterclaim was filed on December 7, 1951, and, as heretofore stated, on January- 9, 1952, the Court ordered the defendant to make a more definite statement with reference to paragraph 14 of the counterclaim. On February 16, 1952, defendant amended paragraph 14 of the counterclaim to read as follows:

"Plaintiff in counterclaim would further allege that with the beginning of the sale by defendants in counterclaim of the Ozark Tours as hereinbefore alleged, that at the Chicago Tribune Travelers Show in March 1948, the defendants in counterclaim arranged a booth for their advertising, which booth was set up near plaintiff's in counterclaim booth, where he was making his advertising as hereinbefore alleged; that defendants in counterclaim were passing out literature and selling tours to the Crescent Hotel in Eureka Springs, with the use of the folder which they had copied from this plaintiff in counterclaim, at which time they began a vicious and unlawful system of slander and libel, through a Mr. Rotchford, brother of the defendant in counterclaim Anna Rotchford, and an agent in charge of defendants in counterclaim booth and advertising campaign, by publishing by means of oral statements made by the said Mr. Rotchford, brother of the defendant in counterclaim Anna Rotchford and by publication of oral statements made by the defendants in counterclaim and each of

them, to the public interested in plaintiff's in counterclaim tours, the following statements which were false and untrue and calculated to damage the business of plaintiff in counterclaim: 'The Basin Park Hotel is an old dilapidated tenement house at the lower part of Eureka Springs, and that the Crescent Hotel where we (Happiness Tours) are sending our customers, is a large beautiful castle on which the owners have just spent $150,000.00 to remodel it;' that at the same time and place and continuing thereafter, on each annual Chicago Tribune Travel Show, in 1949, 1950 and 1951, the defendants in counterclaim, in person and through their agents in charge of their booth, used this slanderous and libelous statement to divers persons, unknown to this plaintiff in counterclaim, with an additional false and fraudulent statement, that the Basin Park Hotel was no longer doing business."

The second amendment to the counterclaim, filed on April 8, 1953, reads as follows:

"Comes the defendants Basin Park Hotel and Joe M. Parkhill, (plaintiffs in counterclaim) and, by leave of Court, would further amend said counterclaim to allege, in addition to the allegations contained in the original counterclaim and the first amendment to paragraph 14, as follows:

"In respect to paragraph 14:

"That from a time prior and continuously since December 7, 1950, the plaintiffs, Happiness Tours, (defendants in counterclaim) have wilfully carried on and are carrying on a campaign of false disparagement against the hotel of plaintiff in counterclaim and the business and reputation thereof, specific examples of which are particularly hereinafter alleged; as follows:

"That about June, 1951, upon inquiry at the office of Happiness Tours in the City of Chicago by a prospective customer who stated specifically that he was interested in a tour to Eureka Springs and the Basin Park Hotel, said customer was told, falsely and wrongfully, by an agent of the person answering inquiries in said office of Happiness Tours, in effect, that, 'the Basin Park Hotel in Eureka Springs, Arkansas,

is a broken down tenement house, with no modern conveniences and very poor rooms; it has no facilities for entertaining guests, and is not a safe place for ladies to go.'

"That on another occasion, about May, 1951, another prospective customer called at the office of Happiness Tours in Chicago and inquired for a tour to Eureka Springs, Arkansas and the Basin Park Hotel, and was falsely and wrongfully informed by an employee and agent of said Happiness Tours who answered the inquiry in said office to the effect that, 'The Basin Park Hotel is not a very good place to stay in; it is an old and dilapidated and an unsafe place to stay.'

"That about June, 1952, a prospective customer of said Basin Park Hotel inquired of the said Happiness Tours at their office in the City of Chicago for a tour to Eureka Springs and specifically to the Basin Park Hotel; that the officer, agent, servant and employee of said Happiness Tours on the occasion aforesaid answered said inquiry by falsely and wrongfully stating in substance: 'There is only one Hotel in Eureka Springs that we would recommend. That is the Crescent Hotel which has been made into a castle high on the hill. The Basin Park Hotel is an old run down hotel in the downtown section; it has no entertainment for guests and is not a safe place to stay.'

"That about the first week of May, 1951, and again about June, 1952, the defendant Joe Parkhill went to the office of the plaintiff, Happiness Tours, in Chicago, Illinois and, without disclosing his identity, inquired of the person in charge of said office for a tour to the town of Eureka Springs and particularly for the Basin Park Hotel and was falsely and wrongfully told in effect, by said agent in charge of said office, in the presence of others then present in said office whose names are unknown to defendant, on the occasion of the inquiry in 1951, that: 'We have the Crescent Hotel which had just had over a half million dollars spent in re-modeling it as a beautiful castle; we are buying one down town but it is an old tenement house and we have not had time to get it in shape, there is no en-

tertainment for the guests and we wouldn't recommend going there.'

"On the occasion of said inquiry about June, 1952, an agent and employee in the office of the defendant, Happiness Tours, in the City of Chicago falsely and wrongfully told the defendant Parkhill, in effect, in the presence of others in said office whose identity is unknown to defendant, in response to his inquiry, 'There is only one hotel there as far as we are concerned. We understand there is an older place down in the old quarters of town which used to be the servants' quarters for the Crescent Hotel. We wouldn't recommend anybody's going down in that part of town. So we could not sell you a tour down there.'

"Further amending, defendant (plaintiff in counterclaim) says that the campaign of false disparagement as heretofore alleged, and the fraudulent and unfair competition practiced by the original plaintiffs, Happiness Tours, all of which practices defendant alleges have continued to date, is doing and will do irreparable injury to defendant's business, good will and to the value of defendant's property as a going concern; that said course on the part of said plaintiffs, Happiness Tours, is rapidly destroying and will ultimately destroy the same, injuring and destroying the good reputation of the Basin Park Hotel, enticing away its guests and prevent the continuance of its business; and, the defendant has no adequate remedy at law.

"Wherefore, defendant Joe Parkhill and Basin Park Hotel, in addition to the prayer of the original answer and counterclaim, prays:

"That plaintiffs Wanita Heuer, Anna Rotchford and Mildred C. Grinnell, Co-Partners trading as Happiness Tours, and each of them and all those controlled by them, their agents, employees and all persons acting through or under them, and each of them, be by apt orders of this Court enjoined, first during the pendency of this cause, and thereafter perpetually, from carrying on or engaging in the campaign of false disparagement against the business and trade of said Basin Park Hotel as hereinabove alleged; and, from using or

distributing the circulars or advertising material contained in plaintiffs' Exhibit No. 3, or circulars confusingly similar to or containing material confusingly similar to that contained in defendants circular which appears as Plaintiffs' Exhibit No. 6, and from using said literature and advertising material in advertising tours to any hotel, or any hotel, other than Basin Park Hotel, Eureka Springs, Arkansas; and, for such other and further orders and relief as to the Court may seem proper."

The pre-trial order of the Court, which has been set out fully hereinbefore, recited the alleged slanderous statements upon which defendant would rely in the trial of the case. While the statements alleged in defendant's second amendment to the counterclaim are not precisely the same as those recited in the pre-trial order, said statements are substantially the same and are sufficient to comply with the order of the Court in that regard. The order also provided that "permission is granted the defendant to amend, within 30 days, his counterclaim by alleging specifically the dates and places of the utterance of the alleged slanderous and disparaging statements and the defendant is ordered and directed to furnish plaintiffs with names and addresses, so far as can be ascertained, of the persons to whom he claims the slanderous and disparaging statements were made, and the names or physical description of the persons making such statements."

Defendant's second amendment to the counterclaim states the dates and places of the alleged disparaging remarks, and therefore it complies with the pre-trial order in this regard. And, since the plaintiffs make no contention that defendant has failed to furnish the required names and other data concerning the persons making and the persons to whom said statements were made, the Court assumes that this part of the order has been complied with.

The order of the Court further permitted the defendant to amend his counterclaim "to pray for an injunction enjoining plaintiffs from engaging in unfair competition with him by the use of advertising folders or matter which may be found to have been originated by the defendant and which had acquired a secondary meaning and which were being used without his express or implied permission."

The Court did not permit the defendant to amend his counterclaim to pray for injunctive relief against the uttering of disparaging statements, and, as a matter of fact, such a prayer is inappropriate since a court will not enjoin the utterance of disparaging statements. In Esskay Art Galleries v. Gibbs, 205 Ark. 1157, at page 1163, 172 S.W.2d 924, at page 927, the Court said:

"The rule with respect to injunctive relief against statements which are injurious to business or trade is found at 28 Am.Jur. 119, which reads in part as follows: 'It is settled by the decisions that where no breach of trust or of contract appears, equity will not enjoin libelous or slanderous statements injurious to plaintiff's business, trade, or profession, or which operate as a slander of his title to property, but the complainant will be left to his remedy at law, if he has any.'"

See, also, 43 C.J.S., Injunctions, § 136, page 682.

Therefore, that part of defendant's second amendment to the counterclaim which seeks injunctive relief against the utterance of disparaging statements by the plaintiffs should be stricken. But, insofar as compliance with the pretrial order of the Court is concerned, the remaining part of the second amendment is sufficient.

The defendant has offered no opposition to plaintiffs' contention that the unfair competition claims of the parties should be determined by the Court, without a jury, and the Court feels that plaintiffs' request is fully justified in view of the equitable nature of said claims and the fact that the primary relief sought by the parties in this respect is injunctive relief. See Missouri Pac. Transp. Co. v. George, 8 Cir., 114 F.2d 757, certiorari denied 312 U.S. 681, 61 S.Ct. 549, 85 L.Ed. 1120; Soap Corporation of America v. Reynolds, 5 Cir., 178 F.2d 503; Bowles, Price Administrator v. Samonas, D.C.Pa., 7 F.R.D. 104.

With regard to their motion for summary judgment in their favor on defend-

ant's counterclaim, plaintiffs contend that they should be granted summary judgment on defendant's claim for disparagement of property for the following reasons: (1) The statements alleged in the second amendment to the counterclaim are new causes of action and do not relate back to the filing of the original counterclaim; that the effective date of their filing is April 8, 1953, and that any cause of action for disparaging statements made prior to April 8, 1952, is now barred by the statute of limitations. (2) The claimant in an action for slander or disparagement of property must allege and prove special damages; that defendant has not alleged any special damages, and further, that defendant, by failing to swear to his answers to plaintiffs' request for admission of facts, is deemed to have admitted said requested admissions, one of which was that defendant did not sustain any loss by reason of any statements made by plaintiffs or their agents.

The defendant contends that "The depositions of Juanita Mooneyham, Joseph H. Ronga, Janet Williams and Lorriane Hosse were taken on the 11th day of March, 1953, the date of the order of the Court finding and establishing the issues and ordering and directing the defendant to amend its counterclaim. These depositions are on file and we ask that they be considered as a part of this response. These depositions disclose that within the statutory limitations, as to time, employees of plaintiffs made the following statements to prospective customers of the defendant at plaintiffs' office in the City of Chicago: * * *". The defendant makes no contention with reference to whether the statements recited in the second amendment to the counterclaim are new causes of action and do not relate back. Nor does the defendant make any contention with respect to his failure to swear to his answer to plaintiffs' request for admission of facts.

In deciding whether plaintiffs are entitled to a summary judgment on the counterclaim, Court must decide whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Fed.Rules Civ. Proc. 28 U.S.C.A.

■■■ As a general rule the law of the forum determines the statute of limitations to be applied in a federal court action, unless, of course, the matter is controlled by a federal statute. Especially is this true when the law of the State where the cause of action arose merely applies a general statute of limitations. See Volume 5, Cyclopedia of Federal Procedure, Third Edition, Section 15.52, Page 530. Thus the Arkansas law provides the governing statute herein, and Section 37–201, Arkansas Statutes 1947, Annotated, provides:

"The following actions shall be commenced within one year after the cause of action shall accrue, and not after; * * * third, all words spoken whereby special damages are sustained."

The original counterclaim in the instant case was filed on December 7, 1951, and paragraph 14 thereof was amended on February 16, 1952, by the addition of an allegation naming the person alleged to have made certain disparaging remarks, and stating the years in which they were made.

Rule 15(c), F.R.C.P., provides:

"Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

There was no substantial change between paragraph 14 of the original counterclaim and paragraph 14 as amended on February 16, 1952, and the claim asserted in the amended pleading clearly "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original" counterclaim. For that reason the amendment relates back to the date of the original counterclaim, December 7, 1951, and for purposes of the stat-

ute of limitations, that is the date this cause of action was commenced. Paragraph 14, as amended on February 15, 1952, stated a claim for alleged disparaging remarks made by a Mr. Rotchford, who is asserted to be the brother of one of the plaintiffs, during the Chicago Travelers Show in March 1948, and "at the same time and place and continuing thereafter, on each annual Chicago Tribune Travel Show, in 1949, 1950 and 1951."

Inasmuch as a one year statute of limitations applies in the instant case, defendant cannot claim damages for any statements made prior to December 7, 1950, and, since the travel show is held in March of each year, the only allegation coming within the statute of limitations is the allegation with reference to the 1951 show. However, in his deposition the defendant admitted that nothing was said to him except in the 1948 show. At page 8 of his deposition appears the following:

"Q. No, I am talking about 1949. As I take it from what you said there was nothing said directly to you in 1949? A. No, not that I remember.

"Q. What I am asking now to whom was anything else said? A. In the show, nothing that I can remember.

"Q. Was there anything said at any subsequent show that you know of? A. No, I can't recall any other show of any incident happening. * * *

"Q. What I am trying to get at, Mr. Parkhill, is the question of whether anything was said at any of the subsequent shows? A. To the one show?

"Q. Yes. A. For the next couple of years I was there nearly all these people that had booths came back the following year. Consequently after one or two shows you get to know everyone within an area around. I became a laughing stock among the ones around while we were there. There was no particular name I could put my finger on."

It is evident from the defendant's deposition that his only possible claim for disparagement of property with reference to statements made at the Chicago Travel Show arose at the show during March of 1948, and such a claim was barred by the statute of limitations prior to December 7, 1951, the date of the filing of the counterclaim.

This leaves for consideration the allegations contained in the second amendment to the counterclaim filed April 8, 1953. The defendant in the second amendment alleges that certain disparaging statements were made by agents of the plaintiffs, at the office of Happiness Tours in Chicago, to prospective customers and to the defendant himself. Since the allegations in the second amendment are different from those in the original counterclaim as first amended, the question arises as to whether the second amendment relates back to the date of the original counterclaim.

The following quotations indicate generally what the law is with respect to the amendment of claims.

In Hartmann v. Time, Inc., D.C.Pa., 64 F.Supp. 671, reversed on other grounds in 3 Cir., 166 F.2d 127, 1 A.L.R.2d 370, the Court at page 680 of 64 F.Supp. said:

"The rule is settled, in Federal and Pennsylvania courts, not inconsistent with Rule 15(c), that an amendment stating a new cause of action on which the statute of limitations has run may not be permitted. * * * The relation back provided for in Rule 15(c) applies, as it is clearly stated therein, only when the asserted claim or defense arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. The proposed amendment, however, does not set up a new claim on the same conduct or occurrence as that alleged in the original complaint, the publication of the issue of "Life" dated January 17, 1944, nor is it a new statement or clarification of the matter therein alleged; rather it seeks recovery upon a new and distinct occurrence, upon a new and separate printing, circulation and publication of alleged libelous matter on February 7, 1944, and this constitutes a new cause of action."

In Hartmann v. Time, Inc., 3 Cir., 166 F.2d 127, at page 136, 1 A.L.R.2d 370, cer-

tiorari denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763, the Court said:

"As to the publication of the issue of "Life" dated February 7, 1944, hereinbefore referred to, we conclude that that publication was separate, distinct and apart from any publication of the issue dated January 17, 1944. For this reason the later publication or publications may not be related back, as the plaintiff urges, to the earlier issue."

See, also, 3 Moore's Federal Practice, Second Edition, Page 852.

In 53 C.J.S., Libel and Slander, § 183, page 290, it is said:

"The court may, in its discretion, allow the * * * complaint to be amended in a proper case * * *. An amendment is proper for the purpose of * * * setting out the defamatory words charged in a different form * * *. So too an amendment is proper for the purpose of adding words of the same general character as the original charge alleged * * * or setting up special damages. * * *

"On the other hand, an amendment introducing a new cause of action will not be allowed; and, without the consent of the parties, this is also true of an amendment which would have the effect of depriving defendant of the right to plead the statute of limitations."

In 33 Am.Jur., Libel and Slander, Section 235, Page 213, it is said:

"But of course, it is entirely clear that an amendment which charges defamatory language essentially different from that previously alleged, thereby setting up what is in effect a new cause of action, is improper, and will not be allowed—particularly after lapse of the period of limitations."

The provisions of Rule 15(c), supra, are concise and clear, and govern in the instant case. Therefore, the real question is whether the claim alleged in the second amendment to the counterclaim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original" counterclaim.

As heretofore stated, the original counterclaim stated a claim for alleged disparaging statements made by Mr. Rotchford at the 1948, 1949, 1950 and 1951 Chicago Travel Shows. However, the claim stated in the second amendment is one for alleged disparaging statements made by agents of the plaintiffs at the Chicago office of Happiness Tours. The depositions of defendant's witnesses disclose that some of these statements were allegedly made by a woman or women employed at the office and some by a man employed there. Thus, the claim stated in the second amendment is based upon different statements, made by different people, to different people, and at a different place than the statements alleged in the original counterclaim as first amended. It seems clear, therefore, that the claim alleged in the second amendment to the counterclaim did not arise out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original counterclaim as first amended. It follows that the second amendment does not relate back to the date of the original counterclaim, but only became effective the date it was filed, April 8, 1953. Thus, any claim for statements made prior to April 8, 1952, were barred by the statute of limitations at the time the second amendment was filed. Only two statements are alleged in the second amendment to have been made subsequent to April 8, 1952.

In the second amendment to the counterclaim the defendant alleges that "about June, 1952, an agent and employee in the office of the defendant, Happiness Tours, in the City of Chicago falsely and wrongfully told the defendant Parkhill, in effect, in the presence of others in said office whose identity is unknown to defendant, in response to his inquiry, 'There is only one hotel there as far as we are concerned. We understand there is an older place down in the old quarters of town which used to be the servants' quarters for the Crescent Hotel. We wouldn't recommend anybody's going down in that part of town. So we could not sell you a tour down there.'"

This alleged statement is not actionable for three reasons:

(1) Although it is asserted that the statement was made in the presence of others in the office, there is no allegation that said persons were prospective purchasers of tours to the Ozarks, and, for that matter, there is no allegation that said persons overheard the remarks made to defendant.

(2) No special damage is alleged to have occurred because of the statement.

(3) The statement is not disparaging of the defendant's hotel since his property is not named or sufficiently identified in the statement.

██ The only other allegation in the second amendment which might state a claim not barred by the statute of limitations is "That about June, 1952, a prospective customer of said Basin Park Hotel inquired of the said Happiness Tours at their office in the City of Chicago for a tour to Eureka Springs and specifically to the Basin Park Hotel; that the officer, agent, servant and employee of said Happiness Tours on the occasion aforesaid answered said inquiry by falsely and wrongfully stating in substance: 'There is only one Hotel in Eureka Springs that we would recommend. That is the Crescent Hotel which has been made into a castle high on the hill. The Basin Park Hotel is an old run down hotel in the downtown section; it has no entertainment for guests and is not a safe place to stay.' "

Defendant in his brief quotes the above statements and states that they are disclosed by the depositions of his witnesses. However, a reading of the deposition discloses that none of the witnesses claimed to have visited the office of Happiness Tours in June of 1952. Miss Juanita Mooneyham testified that she went to the said office in May of 1951. Mr. Joseph G. Ronga testified that he visited the office in June of 1951. Miss Jannette Williams testified that she went to the office in June of 1951. None of the depositions disclose any statements alleged to have been made in 1952, and the allegation to that effect must have been a typographical error. Other-

wise, if a statement was actually made in 1952, defendant has failed to state to whom it was made. Thus, it appears that, excluding the allegations with respect to statements now barred by the statute of limitations, paragraph 14 of defendant's counterclaim does not state a claim upon which relief can be granted and said paragraph 14, including the second amendment thereto, should be stricken.

██ There is another equally compelling reason for striking the disparagement claim of the defendant. On May 13, 1953, plaintiffs served and filed their request for admission of facts under Rule 36, and request number 37 was as follows:

"That the defendant Joe M. Parkhill did not sustain any loss by reason of any statement, disparaging or otherwise, made by the plaintiffs or anyone representing the plaintiffs."

On May 19, 1953, defendant filed what is styled as "Defendant's Admissions to Plaintiffs Request under Rule 36 of the Rules of Federal Procedure," but the defendant did not swear to the said admissions. This Court has only recently had occasion to pass upon the effect of the failure of a party to swear to his admissions. See Sieb's Hatcheries, Inc., v. Lindley, D. C.Ark., 13 F.R.D. 113. There is no doubt but that a failure to swear to said admissions amounts, in law, to an admission of the requested facts. Therefore, since defendant did not sustain any loss by reason of any statements made by plaintiffs or their agents, defendant has no cause of action for disparagement of his property for the reason that special damage is a necessary element of a claim for disparagement of property. See 33 Am.Jur., Libel and Slander, Section 350, page 314; Landstrom v. Thorpe, 8 Cir., 189 F.2d 46, 26 A.L.R.2d 1170, certiorari denied 342 U.S. 819, 72 S.Ct. 37, 96 L.Ed. 620; McBride v. Crowell-Collier Pub. Co., 5 Cir., 196 F. 2d 187. See, also, Rachels v. Deener, 182 Ark. 931, 33 S.W.2d 39; Studdard v. Trucks, 31 Ark. 726.

██ Plaintiffs also seek a summary judgment in their favor on the remaining part of the counterclaim, i. e., the part

614

charging unfair competition, and on their complaint. However, a study of the record convinces the Court that as to the complaint and remainder of the counterclaim there are yet genuine issues of fact to be determined, and that a summary judgment would be inappropriate at this time. In his answer defendant denied that plaintiffs' advertising material had obtained a secondary meaning, and the pleadings, depositions and admissions on file are insufficient to establish as a matter of law, that the plaintiffs' advertising material has gained such a secondary meaning. Likewise, in his counterclaim defendant alleges that he originated advertising matter that has obtained a secondary meaning, and that plaintiffs have been guilty of unfair competition in that they have copied his material. While it is true that the defendant's deposition indicates that his claim in this regard may be weak, nevertheless the Court cannot say as a matter of law that there are no genuine issues of fact as to the counterclaim for unfair competition.

In accord with the foregoing, paragraph 14 of the original counterclaim, as amended on February 16, 1952, should be stricken. Likewise, the second amendment to the counterclaim, filed April 8, 1953, should be stricken, with the exception of that part of the last paragraph which prays an injunction against the use or distribution by plaintiffs of advertising matter contained in plaintiffs' Exhibit No. 3 or plaintiffs' Exhibit No. 6, and the prayer for any other relief the Court may deem proper.

The remaining part of the counterclaim and the complaint state claims for unfair competition and injunctive relief, and therefore the case should be set for trial by the Court on the issues of unfair competition and prayers for injunctive relief as set forth in paragraphs one and two of the pre-trial order of March 11, 1953.

The plaintiffs' motion for summary judgment and motion to strike the second amendment to the counterclaim should be granted to the extent and in the particulars above stated.

An order in accordance with the above should be entered.