**KUKATUSH MINING CORPORATION (N.P.L.) et al., Appellants,**

v.

**SECURITIES AND EXCHANGE COMMISSION et al., Appellees.**

**No. 16734.**

United States Court of Appeals District of Columbia Circuit.

Argued March 21, 1962.

Decided Oct. 11, 1962.

Mr. G. Duane Vieth, Washington, D. C., with whom Messrs. Abe Fortas and William L. McGovern, Washington, D. C., were on the brief, for appellants.

Mr. Ellwood L. Englander, Asst. Gen. Counsel, S. E. C., with whom Mr. Robert L. McCloskey, Atty., S. E. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, and BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Kukatush Mining Corporation is an alien corporation organized under the Mining Companies Act of Quebec, Canada; Kukatush Mining Company Ltd. is a successor corporation organized under the Companies Act of Canada. They appeal from a judgment of the District Court dismissing their complaint for failure to state a claim upon which relief could be granted, denying a motion for a preliminary injunction and for summary judgment.

The proceedings instituted by appellants were directed at the action of the Securities and Exchange Commission, appellees, in listing appellants by name on the so-called "Canadian Restricted List" without notice to appellants, without hearing and without opportunity for these appellants to be heard. The list in question is a public statement by the Commission of the names of Canadian corporations whose securities the Commission has reasonable cause to believe are being or may have been distributed in the United States in violation of registration requirements of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq. Appellants sought an injunction in the District Court, to strike their names from the Commission's Canadian Restricted List which they describe as a "blacklist"; they contend that its issuance and publication without notice or hearing constituted a violation of Section 9(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1008(a) and a denial of due process of law under the Constitution of the United States.[1]

(1)

The Commission contends, inter alia, that appellants as non-resident aliens having no assets in this country on which to base jurisdiction, have no standing to sue. The decided cases would appear to support this position.

That our courts are open in some circumstances, and for some purposes, to persons and corporations of friendly foreign powers is shown by various cases. The case of Disconto Gesellschaft v. Umbreit, 208 U.S. 570, 28 S.Ct. 337, 52 L. Ed. 625 (1908), relied on by the dissent, sheds little real light on the problem since it is readily distinguishable; there the court had jurisdiction of the *res* which consisted of assets of an insolvent debtor which it refused to allow the foreign claimant to remove. Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473 (1931), similarly involves a *res* within our jurisdiction—contracts for ships under construction in American yards. Cia Mexicana De Gas S. A. v. Federal Power Comm., 167 F.2d 804 (5th Cir.1958), held a Mexican corporation was a "per-

---

1. Appellants are aliens not resident here but in Canada; they own no assets in the United States. No business is conducted by either appellant within the United States nor are they or any of their property subject to legal process in this country except as they voluntarily submit to jurisdiction.

son aggrieved" under the Natural Gas Act, 15 U.S.C.A. § 717 et seq. and allowed intervention to seek judicial review. The order under review dealt with the transmission of natural gas from Texas into Mexico. Estrada v. Ahrens, 296 F.2d 690 (5th Cir.1961), is an immigration case falling within the purview of the Administrative Procedure Act. Standing to sue in cases involving rights of immigrants and persons subject to deportation has always stood on a special footing.

It appears, therefore, that the decided cases granting standing to some aliens deal either with resident aliens, or claims of non-residents where the court had jurisdiction of the subject res or with the preferred rights under immigration laws. See also Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950); Pauling v. McElroy, 107 U.S.App.D.C. 372, 278 F.2d 252, cert. denied, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960).

The doubts about standing, however grave, must in the present state of the law be resolved against appellants even though the decisions over the years disclose a definite trend to relax the rigidities of the earlier cases.

### (2)

■ We turn next to the contentions of appellant on the merits in view of the importance of the issues presented and treat those contentions assuming, arguendo, that appellants have standing.

The challenged list is in the form of a public press release available to financial publications and newspapers. Release No. 4407, Securities Act of 1933 (Aug. 17, 1961). The list is in the nature of a warning to brokers and dealers in securities which advises (1) that the securities of the listed companies are not registered for sale in the United States under our law and (2) that the Commission has information that those securities have been or will be offered for sale illegally. The list or announcement neither states nor implies that the appellants, as issu-

ers, are involved in any illegal acts but only that their stock may be the subject of unregistered and therefore illegal transactions. For its purposes and at this stage the Commission does not undertake to pass on any act of appellants.

■ We reject appellants' contention that the "Canadian Restricted List" is a "blacklist," so far as either appellant is concerned, since it forms no basis of direct or adverse action against the appellants, cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 143, 71 S.Ct. 624, 95 L.Ed. 817 (1951); rather it is, as we have suggested, merely a warning to the public, cautioning brokers and dealers to make certain that their transactions in such securities are not illegal. The stock of a foreign corporation, whatever the merit of the issuer or value of the stock, can be sold in another jurisdiction only on the terms prescribed by that jurisdiction. To say, as the Commission does here in its "listing" process, that Kukatush's stock is not eligible to be sold here is simply to state a fact—that the securities have not been registered—which the American public is entitled to know. There is no requirement of a hearing prior to the dissemination of such information. See Fay v. Miller, 87 U.S.App.D.C. 168, 183 F.2d 986 (1950); Hoxsey Cancer Clinic v. Folsom, 155 F.Supp. 376 (D.D.C.1957); Andrews v. Chesapeake & Potomac Telephone Co., 83 F.Supp. 966 (D.D.C.1949). Cf. Holman v. Securities & Exchange Comm., 112 U.S.App.D.C. 43, 299 F.2d 127 (1962). The List does not charge the appellants with any wrongdoing and, indeed, specifically states that the issuers of the listed securities are not necessarily involved in the sales. The Commission expressly disavows any purpose of commenting, through the List, on the investment merits of the securities named. The List does not purport to direct or to arrest action by appellants but is merely advisory; appellants' "rights" are in no sense adjudicated.

■ We agree with the view of Judge Holtzoff that 15 U.S.C.A. § 78u

(a), authorizing the Commission in its discretion to publish information concerning violations of the Securities Exchange Act of 1934, constitutes ample statutory authority for the List, since one of the violations of that Act is to sell securities which have not been listed under the Securities Act of 1933. It is not the action of the issuing corporation but acts of *third persons* dealing in the securities which are the prime targets of the Commission.[2]

██ We note that the Commission has established an administrative hearing procedure[3] for the examination of challenges to a listing; this procedure has been available to appellants from the inception of this litigation, but they have not seen fit to take advantage of it. They complain the proposed hearing would not meet the requirements of due process and would vary in important respects from the provisions of the Administrative Procedure Act. We are not in a position to pass on that claim. "We think answers to the problems posed * * * must await a case * * *. We cannot guess in advance the details of a proceeding to be held, when the rules of procedure permit a valid proceeding." National Lawyers Guild v. Brownell, 96 U.S.App.D.C. 252, 225 F.2d 552 (1955), cert. denied, 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956).

Affirmed.

BAZELON, Chief Judge (dissenting).

Kukatush is an alien corporation organized under the laws of Canada. This court holds that, as such, Kukatush lacks standing to bring this suit. I disagree. Our courts are open to corporations domiciled in friendly countries.[1] Disconto Gesellschaft v. Umbreit, 208 U.S. 570, 578, 28 S.Ct. 337, 52 L.Ed. 625 (1908); 23 Am.Jur. Foreign Corporations §§ 3, 7, 474 (1939); 18 Fletcher, Cyclopedia of Corporations § 8606 (1955). See Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473 (1931); Cia Mexicana De Gas S. A. v. Federal Power Comm., 167 F.2d 804 (5th Cir.1958). Cf. Estrada v. Ahrens, 296 F.2d 690 (5th Cir.1961).[2]

2. Appellants additionally argue that their presence on the list has damaged their reputation and credit, "affected" their contractual relations with other companies, and limited their ability to hire competent employees. These allegations sound in the nature of tort, more particularly in the nature of defamation, as Judge Holtzoff suggested. We find no circumstance on this record which would prompt us to contradict the usual rule that equity does not enjoin a libel or slander. See e. g., Dayton v. McGranery, 92 U.S.App.D.C. 24, 25, 201 F.2d 711, 713 (1953); "Appellant next says that the letters have already injured his reputation and credit and have brought him into public hatred, contempt, scandal and ridicule. If the damage he thus describes is a wrong, [it is essentially tortious and not subject to injunctive relief]." Hoxsey Cancer Clinic v. Folsom, 155 F.Supp. 376 (D.D.C.1957); Heuer v. Basin Park Hotel, 114 F.Supp. 604 (W.D.Ark.1953); New American Library of World Literature v. Allen, 114 F.Supp. 823 (N.D. Ohio 1953); Lawrence v. Atwood, 295 S.W.2d 298 (Tex.Civ.App.1956); see generally 28 Am.Jur. § 134. But see, Krebiozen Research Foundation v. Beacon Press, 334 Mass. 86, 134 N.E.2d 1 (1956).

3. We do not suggest a failure to exhaust administrative remedies, since publication in the Federal Register of the hearing procedure established by the Commission did not occur until after suit was instituted in the District Court. 60 Stat. 238 (1946), 5 U.S.C.A. § 1002(a). Appellants' actual notice of the hearing procedure prior to the institution of suit is not controlling.

1. The majority relies upon Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950), which held that the writ of habeas corpus does not run outside the United States for the benefit of enemy aliens imprisoned in time of war. Kukatush is domiciled in a friendly country and seeks relief within the United States.

2. For purposes of standing, I see no difference between the so-called *"res"* involved in the cited cases—i. e., contracts and assets—and the *"res"* involved in the instant case—i. e., the "Canadian Restricted List." Nor do the cited cases appear to support such a distinction.

Kukatush seeks review under § 10(a) of the Administrative Procedure Act.[3] But publication of the Canadian Restricted List is not "agency action" reviewable under that provision. See Hearst Radio, Inc. v. Federal Communications Comm., 83 U.S.App.D.C. 63, 167 F.2d 225 (1948).

Kukatush also relies on the general equity powers of the District Court. D. C.Code § 11–306. The complaint, which names the Commission and its members, alleges that they exceeded their statutory authority and deprived the company of due process by placing its name on the Canadian Restricted List without first holding a hearing. It is further alleged that the listing damaged Kukatush's reputation in the United States and elsewhere, seriously affected its contractual relations with American and foreign companies, and prejudiced its ability to obtain bank financing in the United States and abroad, and to employ competent directors and employees. Final-

ly, the complaint states in substance that Kukatush's stock has never been distributed in the United States in violation of the Securities Exchange Act of 1934. I think these allegations are sufficient to invoke consideration under the general equity powers of the District Court.[4]

Turning to the merits, I think that distribution of the Canadian Restricted List is authorized by § 21(a) of the Securities Act[5] which permits the Commission "in its discretion, to publish information" concerning violations of the Act.[6] In my view, no prior hearing is required if the Commission has reasonable cause to believe that the Securities Act is being violated.[7] Prompt warning would then be necessary to protect investors.[8] And prior hearing may be impractical where the violators are across the border and beyond the reach of the Commission's subpoena power.

But after the List is issued, I think a company named thereon is entitled to a

3. "Any person * * * adversely affected or aggrieved by [any agency action] * * * within the meaning of any relevant statute, shall be entitled to judicial review thereof." Administrative Procedure Act § 10(a), 60 Stat. 243 (1946), 5 U.S.C.A. § 1009(a).

4. See Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902); Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483 (1938); Ex parte Young, 209 U.S. 123, 155–156, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Copper Plumber & Heating Co. v. Campbell, 110 U.S.App.D.C. 177, 290 F.2d 368 (1961); Davis, Administrative Law § 23.-04 (1958). Cf. United States v. Interstate Commerce Comm., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). See also authorities cited note 9 infra.

5. 48 Stat. 899 (1934), 15 U.S.C.A. § 78u.

6. See Schmidt v. United States, 198 F.2d 32 (7th Cir. 1952), cert. denied, 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693 (1952).

7. See R. A. Holman & Co. v. Securities & Exchange Comm., 112 U.S.App.D.C. 43, 299 F.2d 127, cert. denied, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962). Cf. Hannah v. Larche, 363 U.S. 420, 446–448, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

Exhibits attached to the Commission's motion to dismiss may have been adequate for this purpose. They reveal that investigations by the Commission in cooperation with the Quebec Securities Commission turned up evidence that Kukatush shares were unlawfully distributed in the United States in 1959, 1960 and 1961. In addition, those exhibits show that a registration statement covering an issue of Kukatush stock was filed in 1961. It was withdrawn when the company learned the Commission planned to institute stop order proceedings because the statement was believed to be "false and fraudulent."

8. See generally 17 SEC Ann.Rep. 159 (1957); Pollock & Timbers, Extradition from Canada to the United States for Securities Fraud: Frustration of the National Policies of Both Countries, 24 Fordham L.Rev. 301 (1955).

hearing.[9] The Commission has virtually conceded this by "establishing a definite procedure to secure prompt determination of [the] question [whether the company was improperly listed]." [10]

9. See Holman v. Securities & Exchange Comm., supra note 7. Cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Hannah v. Larche, 363 U.S. 420, 488, 492, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960) (Frankfurter, J., concurring) (dictum). But cf. Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

10. Brief for the Commission, p. 7. The procedure was announced after this suit began in SEC Securities Act Release No. 4407 (1961). Appellant was not required to follow the procedure before bringing this action, however. See Administrative Procedure Act § 3(a), 60 Stat. 238 (1946), 5 U.S.C.A. § 1002(a).