Mireille R. **ALBERTI**, Appellant,

v.

Mary Ruth **CRUISE**, Appellee.

No. 10029.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 7, 1965.

Decided Sept. 14, 1967.

Albert J. Ahern, Jr., Washington, D.C., for appellant.

Louis Koutoulakos, Arlington, Va. (Varoutsos, Koutoulakos & Arthur, Arlington, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge:

Plaintiff, Mireille R. Alberti, a French national, instituted this action against Mrs. Mary Ruth Cruise to recover damages for malicious prosecution and defamation of character, alleging that Mrs. Cruise had maliciously attempted to have her deported from the United States, had brought false criminal charges against her in a state court of Virginia, and had maliciously caused to be published false and defamatory statements to various persons relating to plaintiff's chastity, morality, etc.

Mrs. Cruise answered, denied plaintiff's charges, filed a counterclaim asserting that the plaintiff had interfered with and harassed Mrs. Cruise in her family relationships and further counterclaimed against plaintiff for criminal conversation. Mrs. Cruise moved for a temporary injunction to restrain the plaintiff from contacting her by telephone, letter or otherwise and the court thereupon orally announced the granting of a broad injunction not only against Mrs. Alberti but against Mrs. Cruise and Mr. Cruise (the latter not a party to the suit) and other members of the Cruise family (not parties), restraining them from contacting or communicating with appellant. The court ordered this restraint pending trial of the case on the merits but no formal order was entered. On January 11, 1965, the case came on for trial before a jury and at the close of the plaintiff's case the court directed a verdict in favor of the defendant. Defendant's claims, except the request for a permanent injunction, were dismissed on her motion. The court then proceeded to enter a permanent injunction against not only the plaintiff, Mrs. Alberti, but also against the defendant, Mrs. Cruise, Mr. Cruise, and other persons. This injunction, which presents the sole question on appeal, will be later discussed in detail. No appeal was taken from the court's order directing a verdict in favor of the defendant.

At trial there was evidence to establish that plaintiff met defendant's husband, who was a Commander in the United States Navy, in France when he was stationed in the Mediterranean area. By her own admission, plaintiff lived with Mr. Cruise as his paramour throughout Europe. Plaintiff testified that Commander Cruise had promised to marry her, assuring her that he was procuring a divorce from the defendant. The testimony established that plaintiff later came to Rhode Island and lived with Commander Cruise while Mrs. Cruise remained with her five children in Florida. Plaintiff claimed that Commander Cruise was the father of a son born to her after she came to the United States but there was no evidence to support her claim other than her own testimony. Plaintiff followed Commander Cruise to Virginia Beach where he was temporarily stationed and then to northern Virginia, during which period she wrote Commander Cruise countless love letters and postcards. The illicit relationship between Commander Cruise and the plaintiff continued. There was evidence to show that plaintiff met Mrs. Cruise under the false pretext that she was a service wife also and later when she represented herself as a laundress. During this time Mrs. Cruise was completely unaware of the relationship existing between her husband and the plaintiff. Later plaintiff told Mrs. Cruise about her relationship with Commander Cruise obviously in the hope that Mrs. Cruise would leave her husband.

Mrs. Cruise left for a short period to think things over but after consulting with her pastor and perhaps others decided to keep the family together and returned to her home. There was evidence to show that the plaintiff, through devious means, ascertained the addresses of Commander Cruise's sisters and brother-in-law, his mother and Mrs. Cruise's mother, and proceeded to call them and to write to some of them. It was asserted that plaintiff contacted, wrote to and visited Navy personnel attached to the same squadron as Commander Cruise, that when Commander Cruise and his family were transferred to the Washington area plaintiff followed them there, that she would follow the family to church, that she would wait for the Commander in the mornings when he was on his way to work in Arlington, Virginia, and that she would follow him.

Two large envelopes containing letters and cards were offered in evidence by Mrs. Cruise while plaintiff's case was in progress. Letters addressed to Commander Cruise, broadly classified as love letters, and other letters addressed to relatives of the Commander advising them of the birth of a baby which she claimed was fathered by the Commander were admittedly written by Mrs. Alberti. On cross-examination, she denied sending a series of cards presented to her and denied that she waited for the Commander when he went to work or that she had ever parked in his driveway.

At the close of the case the court gave an oral statement from the bench as shown in the marginal note below.[1]

[1] " * * *. I think it is a proper case for an injunction. The Court will issue an injunction. There comes a time when things of this type must end. There comes a time for the end of everything, certainly to an end of litigation of this type. It cannot go on having everybody disturbed and interfered with, and when I say 'everybody' I am referring to a lot of personnel in the Navy, neighbors, friends, public officials, and even innocent children and everybody on account of the wrongs of two persons. All the wrongs here, major wrongs, are the wrongs of Commander Cruise and Mrs. Alberti. They were both adults, as far as I am concerned substantially adults. They knew what they were doing when she came over here from France, and accepting for the sake of argument that he induced her to come over on the promise of marriage, assuming all that to be true, she knew after a certain length of time that that was a false promise. She says she did. She knew he was married. She knew his children. She proceeded to continue to live with him. According to her statement she had a child.

"Now, even if he wanted to do what she wanted him to do, and I am not inferring that he should or should not have done it, he could not have done it, certainly could not marry the woman, and he could not get a divorce under laws in this jurisdiction without grounds; certainly his misconduct would not be grounds.

"These letters, these telephone calls, this harassment is inexcusable as far as I am concerned. It must cease and desist. That includes all persons. I am going to enter an injunction. I am going to enter it myself. I am going to write it out myself in terms so there will be no misunderstanding. And the injunction is going to permanently enjoin and restrain on this record the plaintiff, Mrs. Alberti, from interfering, annoying, harassing in any manner or form Commander Cruise and particularly his wife and the children. She will be enjoined from seeing, talking to, writing letters to or causing it to be done and, conversely, and the Court is aware he is technically not a party to this suit in this Court—he was here when part of it was done—I am going to include in the injunction that Commander Cruise not see or communicate with or in any manner have any contact or relationships with Mrs. Alberti so long as he is the legal husband of Mrs. Cruise. What he does after that if that day ever arrives, which I am not commenting on, is another matter. So long as he is married to her he shall not do these things. And I am going to enjoin Mrs. Cruise for her benefit as well as everybody else's benefit not to get in touch with Mrs. Alberti for any reason whatsoever directly or indirectly or remotely, not to cause anybody else to do it and not to be saying anything about her or doing anything about her, and that applies to both of them—I mean to anybody else, except where she is required to do officially. Of course, that would exempt, —and if there is any question about it they can come to Court to find out—that would apply to the others—if they are sub-

The formal injunction order later entered was, in pertinent part, as follows:

"Upon the hearing of this cause upon the merits, it appearing to the Court from the evidence heard that Mireille R. Alberti had caused to be mailed numerous articles of correspondence to various members of the Cruise family designed to harass, embarrass and annoy various members of said family, and that the said Mireille R. Alberti had contacted various members of the Cruise family for the same purposes; and that Mary Ruth Cruise had contacted various and sundry persons including the Immigration and Naturalization Service of the United States for the purpose of having the said Mireille R. Alberti deported; and from other findings more particularly set forth by the Court in its oral opinion rendered at the conclusion of the said hearing; it is

"ADJUDGED, ORDERED AND DECREED that the said Mireille R. Alberti be, and she hereby is, restrained and enjoined from interfering with, molesting, harassing or contacting William F. Cruise or any member of his family; and it is further

"ORDERED that William F. Cruise and every member of his family be, and they hereby are, restrained and enjoined from interfering with, molesting, harassing or contacting Mireille R. Alberti, said restraining order to remain in full force and effect until the further order of this Court."

As stated, the court granted a temporary restraining order pending the disposition of the litigation. Rule 52(a) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. * * *."

■ On its face, Rule 52(a) would appear to apply only to interlocutory injunctions. However, it has been held that the language of the Rule "[i]n all actions tried upon the facts without a jury * * *" encompasses suits in which permanent injunctions are issued. Hook v. Hook & Ackerman, Inc., 213 F.2d 122, 130 (3 Cir. 1954). See 5 Moore's Federal Practice, ¶ 52.07, p. 2668 (2d ed. 1966) (1966 Supp.). However, there were no findings of fact or statements of conclusions of law in connection with the announcement of the temporary restraining order.

■ Rule 65(d) of the Federal Rules of Civil Procedure provides in pertinent part:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * *."

There is no doubt that Rule 65(d) is applicable here. The Rule clearly requires that every restraining order and order granting an injunction shall (1) set forth the reasons for its issuance, (2) be specific in its terms, and (3) describe in reasonable detail and not by reference to the complaint or other document the act or acts sought to be restrained. 7 Moore's Federal Practice, ¶ 65.11, p. 1665 (2d ed. 1966). B & C Truck Leasing, Inc. v. I. C. C., 283 F.2d 163, 167 (10 Cir. 1960). These terms

poenaed and required to do something that is another story. I am talking about of their own.

"The only way to stop these kind of escapades is to, frankly, treat adults like they are children and somebody compel them not to do certain things. They ought not to do it anyway. I made it very clear that that is what I am entering. Now, I understand there are some people that object to that, but, nevertheless, the Court is going to enter it, and it is going to remain in full force and effect subject only to a reversal by the Fourth Circuit Court of Appeals which, of course, everyone has the right to appeal to if they want to."

are mandatory and must be observed in every instance, Mayflower Industries v. Thor Corp., 182 F.2d 800 (3 Cir. 1950).

■ We conclude that there was not sufficient compliance with Rule 65(d). The court stated no valid reason for the issuance of the injunction, merely stating in most conclusory fashion that from the evidence it appears that plaintiff had mailed "articles of correspondence" to and had contacted members of the Cruise family in order to harass, embarrass and annoy them. Furthermore, there is no finding by the court that Mrs. Cruise would suffer irreparable damage or that she has no adequate remedy at law in the event the injunction should be denied. In Ross-Whitney Corp. v. Smith Kline & French Laboratories, 207 F.2d 190, 198 (9 Cir. 1953), it was held that a statement by the court that plaintiff would suffer irreparable injury was specific enough to satisfy Rule 65(d) when that statement was read along with detailed findings of fact made by the court. But here there were no specific findings of fact as required and no statement of conclusions of law to support the issuance of the injunction.

The injunction order directs that the plaintiff, Alberti, be restrained from "interfering with, molesting, harassing, or contacting William F. Cruise or any member of his family." The order does not specifically describe the act or acts sought to be restrained. The order then restrains and enjoins "William F. Cruise and every member of his family" from "interfering with, molesting, harassing or contacting Mireille R. Alberti." There was no request for such injunctive relief. Additionally, the only member of the Cruise family who is a party to this litigation and over whom the court had jurisdiction is Mrs. Cruise. Professor Moore has stated that "[l]oose injunctive orders are neither easily obeyed nor strictly enforceable, and are apt to be oppressive." 7 Moore's Federal Practice, ¶ 65.11, p. 1666.

■ There are even more fundamental objections to the injunction order. Generally an injunction will not issue to restrain torts, such as defamation or harassment, against the person. Kukatush Mining Corp. v. Securities and Exchange Com'n., 114 U.S.App.D.C. 27, 309 F.2d 647, 651, n. 2 (1962); Kessler v. General Services Administration, 236 F.Supp. 693, 698 (S.D.N.Y.), aff'd per curiam, 341 F.2d 275 (2 Cir. 1964). See generally 27 Am. Jur. 2d Equity § 67 (1966); 175 A.L.R. 499, 501. There is usually an adequate remedy at law which may be pursued in seeking redress from harassment and defamation.

In Kessler v. General Services Administration, supra, plaintiff sought an injunction restraining defendants from making further libelous statements and from further molestation or interference with her performance of her work. The court noted "As a general rule, a court will not issue an injunction to restrain torts against the person, since the remedy at law is adequate. 4 Pomeroy, Equity Jurisprudence, § 1347 (5th Ed. Symons, 1941)." 236 F.Supp. at 698. In the instant case there was neither allegation nor proof that Mrs. Cruise had no adequate remedy at law.

■ Furthermore, the order in the instant case enjoins the plaintiff from "contacting" Mr. Cruise or the members of his family. Considered in context the plaintiff would thus be enjoined from speaking or writing to Mr. Cruise or any member of his family. We think this portion of the order is clearly a prior restraint upon Mrs. Alberti's rights of freedom of speech guaranteed by the First Amendment to the Constitution and cannot be upheld although motivated, it would seem, by a desire to protect *Mrs. Cruise* and her family from harm in unspecified respects. The danger to be avoided is not shown to be so great or so imminent as to justify the invasion of constitutional freedoms.

The case is remanded with directions to the District Court to vacate the injunction order forthwith. Each party shall bear her own costs on appeal.

Reversed and remanded with directions.