No. 27,920.

GEORGE W. WARREN et al., *Appellants*, v. THE CITY OF TOPEKA and
J. TORSNEY, *Appellees.*

(265 Pac. 78.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS — *Swimming Pool in Public Park — Liability for
Drowning of Child.* The decisions in the cases of (a) *Gilliland v. City of
Topeka,* 124 Kan. 726, 262 Pac. 493, and (b) *Harper v. City of Topeka,* 92
Kan. 11, 139 Pac. 1018, followed and approved to the effect that (a) "a
swimming pool in a public park of a city, constructed of concrete and
equipped with the usual swimming-pool accessories, is not a nuisance, al-
though attractive to children," and (b) "ordinarily, cities and other munic-
ipal corporations in the exercise of their governmental functions are not
liable in damages for any neglect, or even wrongdoing, of their officers in
the discharge of such duties unless such liability is expressly imposed upon
them by law."

2. SAME—*Employees—Purchase of Park Concessions Operated Under Control
and Supervision of City.* Where an individual purchases from a city the
concessions of a city park and enters into a contract with the city to con-
duct the same for a limited time on certain terms and with certain re-
strictions, and the city reserves to itself the complete supervision and con-
trol of the entire park and the property therein and the right from time to
time to impose rules and regulations as to the operation of the concessions
granted, *held,* that such individual is more nearly an employee of the city
than a lessee.

3. MUNICIPAL CORPORATIONS—*Contracts With Individual for Public Benefit—
Liability to Individuals for Breach.* Where a contract is made by a munic-
ipal corporation with an individual, requiring of him the performance of
certain specific duties for the benefit of the public generally, and he neglects
or omits to perform such duties and breaches his contract with the city,
he is not individually liable for damages to a private citizen or resident
for loss on account of such neglect or breach unless there be a privity of
contract between such citizen and the individual contractor.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE,
judge. Opinion filed March 10, 1928. Affirmed.

*Eugene S. Quinton,* of Topeka, for the appellants.

*J. E. Addington* and *Irl H. Byler,* both of Topeka, for appellee City of
Topeka; *Leonard S. Ferry* and *Frank E. Miller,* both of Topeka, for appellee
J. Torsney.

Contracts, 13 C. J. p. 702 n. 67. Municipal Corporations, 43 C. J. pp. 922
n. 19, 1172 n. 17; 33 L. R. A. n. s. 523; L. R. A. 1915C 435; 29 A. L. R. 863;
42 A. L. R. 263; 19 R. C. L. 1129.

The opinion of the court was delivered by

HUTCHISON, J.:   In this action plaintiffs seeks to recover damages against the city of Topeka and J. Torsney for the death of their twelve-year-old daughter, who was drowned in a cement swimming pool in Gage Park on June 16, 1926.   The court sustained the demurrer filed by each defendant to the petition, and plaintiffs appeal.

The petition, in addition to the general statement of facts, alleges that the city had constructed and was maintaining such cement swimming pool in the park, naturally attractive in every way to young people in its construction and beautiful surroundings, but with a drop-off of about four feet without suitable warning or danger signals and protection, and without the presence of guards to rescue those unaccustomed to swimming and unable to help themselves; that their young daughter and her girl cousin, one year older, on June 16, 1926, were attracted to such pool and surroundings, rented a locker and bathing suits about five o'clock in the afternoon and went in swimming, no others being in the pool at the same time. They were drowned, their bodies being found beyond the drop-off, where the water was about nine feet deep.   The petition further alleges that the city operated such pool for hire and had the defendant Torsney in charge of it under a written contract, attaching a copy thereof to the petition.   It is further alleged that the death of the plaintiff's daughter was due to the negligence of both defendants.

The attached agreement provides, among other things, that the city, for a valuable consideration, sold and granted to Torsney the exclusive privilege to operate all the concessions in the park for a definite period, including the time of the accident; that in operating such concessions the city is to maintain supervision and control over the park and to have complete control and supervision at all times as to cleanliness and sanitary condition; that Torsney is to furnish suitable persons to be on guard and save the lives of any and all persons using the swimming pool, whose duty it shall be to be present at all times when there are bathers in the pool, for the purpose of assisting and protecting anyone whose life may be in danger from drowning in the pool; that the commissioner of parks and public property of the city shall at all times have the general supervision of the park and property, and that Torsney, in the operation of the concessions granted, shall at all times observe such

rules and regulations as may be laid down from time to time by such commissioner; that all rates and charges are enumerated in the contract and Torsney is required to give the city a bond for $5,000 to hold the city harmless from all expenses, damages and costs.

As far as the city is concerned this is not a new question, it having been held that a swimming pool in a city park is not an attractive nuisance:

"A swimming pool in a public park of a city, constructed of concrete and equipped with the usual swimming-pool accessories, is not a nuisance, although attractive to children." (*Gilliland v. City of Topeka*, 124 Kan. 726, syl., 262 Pac. 493.)

It was there held that the maintenance of such well-equipped swimming pools was within the exercise of the governmental power of a city, and there could therefore be no liability for damages against the city. The unfortunate accident is to be most seriously regretted, and the fond parents have the sympathy of all who know of the accident, but we must recognize the modern tendency to furnish artificial swimming pools instead of the natural swimming holes and to locate them in the most convenient places for use and enjoyment, viz., in parks. In this most recent expression of our court, it is stated in the opinion:

"The swimming pool was an artificial pool constructed of cement. It had a sloping bottom which provided varying depths of water, and was equipped with a diving platform, springboards, a bathhouse, and other swimming-pool accessories. While attending a Sunday-school picnic in the park the child went into the pool, got beyond his depth and was drowned. No life guard was on duty at the time. Plaintiffs stand on the proposition that the swimming pool with its equipment and appurtenances was a nuisance attractive to children, and consequently that the city may not avoid liability by invoking the doctrine of exercise of governmental power in maintaining the swimming pool. The swimming pool was doubtless attractive to children, but it was not a nuisance, producing public annoyance, inconvenience, discomfort or hurt. It was a feature of the park tending to promote public health, happiness and welfare. The accident to plaintiffs' child was a misfortune greatly to be deplored, but it did not change the essential nature of the place."

The doctrine of cities not being liable in damages for the negligence or even wrongdoing of its officers or agents in the exercise of their governmental functions has been repeatedly affirmed in Kansas. In *Harper v. City of Topeka*, 92 Kan. 11, 139 Pac. 1018, it was declared with reference to a natural swimming pool maintained in a city park as follows:

"Ordinarily, cities and other municipal corporations in the exercise of their governmental functions are not liable in damages for any neglect, or even wrongdoing, of their officers in the discharge of such duties unless such liability is expressly imposed upon them by law." (p. 13.)

In the case of *Hibbard v. City of Wichita,* 98 Kan. 498, 159 Pac. 399, it was held that "the maintenance of a zoölogical garden in a public park by a city is a governmental function, and the city is not liable in damages for injuries inflicted on visitors by animals through the negligence of the city's officers or agents in not properly confining the animals." In the case of *Rose v. City of Gypsum,* 104 Kan. 412, 179 Pac. 348, it was held that, while it was the duty of the city and its officials to forbid and prevent an automobile race on its streets, the city was not liable in damages for negligence of its officers in the discharge of such governmental duties. The same principle was adhered to and maintained in the cases of *Bailey v. City of Topeka,* 97 Kan. 327, 154 Pac. 1014, and *Gorman v. City of Rosedale,* 118 Kan. 20, 234 Pac. 53. No good purpose can be served in further enumerating the decisions which hold that a city is not liable in damages for loss sustained through the negligence of its officers or agents while in the exercise of its governmental functions.

There is no question as to the demurrer of the city of Topeka being properly sustained by the trial court; but let us consider and see whether or not a different rule should prevail as to the demurrer of the defendant Torsney, whose negligence is alleged in the petition as being the same as that of the city, and futher as being the lessee of the pool from the city by virtue of a contract between him and the city, which is set out in full as an exhibit to the petition. A careful examination of the agreement attached to the petition does not show it to be a lease from the city to defendant Torsney. It can more properly be called a concession, with the city reserving to itself and the commissioner of parks and public property full and complete control and supervision over the entire park and the property therein, and the right to impose from time to time rules and regulations as to the operation of the concessions granted. We think, as was said concerning an apparently similar agreement in the Bailey case above cited, that "the concessions granted do not amount to the leasing of any part of the park  .  .  .  nor do they involve the loss of control over it by the public officers." (p. 329.) If the defendant Torsney does not have a lease, but only a concession, with absolute super-

vision and control to be exercised over him at all times by the city and its officers, he cannot be said to be an independent contractor, but more properly an agent or employee of the city. An independent contractor is defined in *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120, to be "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work." (Syl. ¶ 2.) See, also, *Railroad Co. v. Madden*, 77 Kan. 80, 93 Pac. 586; *Nordgren v. Southwestern Bell Telephone Co.*, 125 Kan. 33, 262 Pac. 577.

At most, the defendant Torsney was an employee or agent carrying out the orders and directions of the city and its officials, particularly the commissioner of parks and public property. His negligence in the discharge of duties along the line of governmental functions would be much, if not identically, the same as that of his superior officer, the commissioner of parks and public property, and it has been held that the negligence of such officers does not render them liable individually for damages, because the duty neglected was not owed to the individual complaining, but to the public.

"The neglect of a public officer to perform a public duty can constitute an individual wrong only when some person can show that the performance thereof involved a duty owing to himself as an individual, and that by reason of its nonperformance he has suffered a special and peculiar injury." (*Construction Co. v. Sedgwick County*, 106 Kan. 410, syl. ¶ 1, 186 Pac. 492.)

In that opinion it was said:

"The individual members, acting as a board, were required to give notice by publication for the calling of the election. The board failed to give the proper notice and the election was void, but the duty it owed in this respect was not to the appellant; it was to the public alone." (p. 416. See, also, 2 Cooley on Torts, 3d ed., 446.)

A special reason assigned why defendant Torsney should be liable is because he failed and neglected to be on guard himself and to maintain guards when bathers were in the pool, to save the lives and to assist and protect those in danger of drowning. This was a contractual duty which he owed to the city under the terms of the agreement. A breach of his duty in this respect would make him liable to the city, but not to the public. No individual can say that any duty to him has been violated by the neglect of Torsney to provide a life guard. The agreement made it the duty of Torsney to render a particular service which was of value to the individual

Warren v. City of Topeka.

members of the public, but it created no liability for any harm caused to them by its breach. The individuals as such are not in themselves entitled to such a service, and it is certainly not a legal, enforceable duty at the command of the public or any individual member thereof. It was held in *Dixon v. Railway Co.*, 104 Kan. 404, 179 Pac. 548, that "an ordinance which requires the abutting owner to repair sidewalks which become dangerously defective, and authorizes the city to make such repairs at his charge if he fails to do so within ten days of the receipt of an official notice of what has been determined to be necessary, does not render such owner liable to a pedestrian who is injured by reason of a defect in the walk." (Syl. ¶ 2.) We think the crucial test as to a recovery from the defendant Torsney for his neglect to furnish guards or to comply with any other requirement of his contract is whether or not the party complaining of the breach stands in privity with such contract. If he does not so stand, he cannot recover.

"Where a city contracts with a water company to furnish a supply of water for use in extinguishing fires, such supply to be paid for by a levy of taxes upon the taxpayers of the city, and by the terms of the city ordinance, which the water company accepts, the water company agrees 'that it will pay all damages that may accrue to any citizen of the city by reason of a failure on the part of the company to supply a sufficient amount of water, or a failure to supply the same at the proper time, or by reason of any negligence of the water company,' there is no such privity of contract between a citizen or resident and the water company as will authorize him to maintain an action against it for the injury or destruction of his property by fire, caused by the failure of the water company to fulfill its contract." (*Mott v. Water Co.*, 48 Kan. 12, syl., 28 Pac. 989.)

The petition fails to state a cause of action against defendant Torsney. The ruling of the trial court in sustaining both demurrers is affirmed.

HARVEY and HOPKINS, JJ., concur in the decision as to the city of Topeka, but dissent as to the conclusion reached concerning J. Torsney.