William Bertie **HANDLEY**, Adminis-trator, Plaintiff,

v.

The **CITY OF HOPE, ARKANSAS,** Defendant.

Civ. A. No. 555.

United States District Court
W. D. Arkansas, Texarkana Division.

Feb. 1, 1956.

George F. Edwardes, Texarkana, Ark., Conner Patman, Texarkana, Tex., for plaintiff.

W. S. Atkins, Albert Graves, C. V. Nunn, Jr., Hope, Ark., for defendant.

JOHN E. MILLER, District Judge.

The original complaint in the instant case was filed on April 19, 1955, by William Bertie Handley and his wife, as parents and next of kin of Margaret Yvonne Handley, deceased, and by William Bertie Handley as the administrator of the estate of the deceased, against the defendant, the City of Hope, Arkansas, a municipal corporation.

Plaintiffs alleged that the defendant was conducting and operating a swimming pool in the City of Hope, Arkansas; that the City derived income from said enterprise, and the same was being operated in a proprietary or corporation capacity; that the pool was operated exclusively for the use and benefit of the Caucasian race; that the patrons thereof were not limited to residents of the City of Hope, but that all persons able and capable of paying an admission fee were admitted.

Plaintiffs further alleged that on June 23, 1954, the deceased, Margaret Yvonne Handley, a child 11 years of age, was accepted as a customer of the said swimming pool; that on said date the child was drowned as a result of the negligence of the defendant in failing to keep adequate lifeguards on duty; and that the lifeguards were negligent in failing to keep a lookout and in failing to rescue the deceased after they were notified that she had inadvertently stepped into water over her head. Other specific allegations of negligence were made in the complaint, and plaintiffs sought damages as a result of the death of Margaret Yvonne Handley.

On June 6, 1955, the defendant filed a motion for a more definite statement, and on June 15, 1955, the Court overruled defendant's motion. However, on said date the Court entered an order dismissing the complaint as to the plaintiffs, William Bertie Handley and wife, individually, leaving William Bertie Handley as administrator the sole party plaintiff. This order was entered since,

under the Arkansas law, when a personal representative has been appointed he is the only person who may maintain a suit for damages for wrongful death, and he is entitled to recover all damages resulting from the wrongful death, both for the benefit of the estate and the next of kin. Reed v. Blevins, 222 Ark. 202, 258 S.W.2d 564; Southwestern Gas & Electric Co. v. Godfrey, 178 Ark. 103, 10 S. W.2d 894.

The defendant filed its answer on June 20, 1955, in which it denied the allegations of plaintiff's complaint and pleaded contributory negligence on the part of the deceased and her parents as a defense to plaintiff's claim.

 On September 3, 1955, the plaintiff filed certain requests for admissions, and on September 10, 1955, the defendant responded to said requests for admissions. However, defendant's answer to the requests for admissions was not sworn to, and as a matter of law the requests for admissions stand admitted. Sieb's Hatcheries, Inc., v. Lindley, D.C. W.D.Ark., 13 F.R.D. 113; Heuer v. Basin Park Hotel and Resort, D.C.W.D. Ark., 114 F.Supp. 604. The requests for admissions, which must be deemed as admitted, establish that the defendant operated a swimming pool in the City of Hope; that admissions were charged; that all members of the Caucasian race were admitted to said pool and that it was being operated exclusively for the use and benefit of the Caucasian race; that the residents of the City of Hope are not exclusively members of the Caucasion race; that the deceased was accepted as a customer on June 23, 1954; that the lifeguards on duty, who were agents of the defendant, knew that the deceased could not swim; that the pool has deep water which is over the head of the deceased; that the deceased died as a result of drowning; that she suffered great pain and suffering; that the cost of her funeral was $750; and that her parents suffered great pain, anguish, and mental suffering as a result of her drowning.

On November 2, 1955, plaintiff filed an amendment to his complaint alleging in the alternative that the defendant entered into a contract with the deceased for her to swim in the pool; that there was an implied contract that the pool was a safe place in which to swim; and that the defendant breached its covenant by failing to take proper care of the deceased.

On November 7, 1955, the defendant filed an answer to plaintiff's amended complaint, denying each and every material allegation thereof.

On November 25, 1955, plaintiff filed a second amendment to his complaint which merely sets out in detail the specific acts and omissions which plaintiff alleges amount to negligence on the part of the defendant and its agents.

In the meantime, the Court had requested the parties to file trial briefs, and not having received said briefs the Court on November 28, 1955, entered an order, requiring the parties to submit trial briefs.

On the same date, November 28, defendant filed its answer to plaintiff's second amendment to the complaint, and denied the material allegations thereof. The case was set for trial on December 8, 1955, and prior to that date the Court received and considered the briefs of the parties, and also made an independent search of the applicable authorities. After considering the briefs and other authorities the Court decided that a pretrial hearing should be had before the case proceeded to trial on its merits. Such a hearing was held on December 8, 1955, and the Court and counsel discussed the legal questions involved in the action.

The Court was of the opinion that the fundamental question involved was whether or not the operation of the swimming pool constituted a governmental or a proprietary function, and after a full discussion of the questions involved the Court continued the case, with leave to plaintiff to file an amendment to his complaint and leave to de-

fendant to file a motion to dismiss or motion for summary judgment as it might desire. On the same date, December 8, 1955, the deposition of Mrs. Foy Hammonds, manager of the swimming pool, was filed.

On December 10, 1955, plaintiff filed his third amendment to the complaint, and alleged in substance that the swimming pool constituted an attractive nuisance for which the defendant would be liable. On December 14, 1955, defendant filed its answer to plaintiff's third amendment.

On December 19, 1955, the defendant filed a motion for summary judgment, attaching thereto a certified copy of an ordinance of the City of Hope, Arkansas, and an affidavit of Charles Reynerson, treasurer of the City of Hope.

On December 19, 1955, the Court entered an order allowing plaintiff until January 31, 1956, to serve and to file a response and supporting documents in opposition to defendant's motion for summary judgment.

No response has been filed by the plaintiff, and the motion for summary judgment is now ready for final disposition. The question presented here is whether there is any genuine issue as to any material fact, and if not, whether the defendant is entitled to a judgment as a matter of law. Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A.; Marion County Co-op Association v. Carnation Co., D.C. W.D.Ark., 114 F.Supp. 58.

There is no genuine issue as to any material fact in the case. In addition to the facts, heretofore set forth, which were admitted by the defendant as a matter of law, the following undisputed facts appear in the record:

The swimming pool was constructed in 1947 and 1948 by the City on a tract of land in the City limits of the City of Hope, owned by the City and known as Fair Park. The construction cost was $48,541.78, which was paid in cash from the City funds. Since its construction, including the 1955 season, the receipts from the operation of the pool have amounted to $33,812.55, and the cost of operation has amounted to $35,734.44. These expenses were for salaries and supplies only, and the maintenance of the pool was handled by the City Street Department in connection with the general upkeep of the park. The water and electricity for the pool were furnished by the Hope Municipal Water and Light Plant at no cost to the swimming pool account. (These facts were established by the affidavit of Charles Reynerson and no opposing affidavit or affidavits were filed by the plaintiff.)

In 1952, an ordinance was passed by the City of Hope creating "The Department of Parks and Recreation", and also creating an administrative body to be known as "The Commission of Parks and Recreation". Among other things the ordinance provides that the Commission shall administer the operation, maintenance, and development of all municipal swimming pools, and that all monies obtained through revenue-producing activities of the Department of Parks and Recreation shall be deposited in a special account to be known as "The Hope Parks and Recreation Commission's Fund". (The ordinance was attached to defendant's motion for summary judgment.)

The Commission employs a full-time Parks and Recreation Director and two assistants during the summer months. The salaries of the Director and the assistants are paid by the City from its general funds, and any deficit in the operation of the pool is paid by the City. Mrs. Foy Hammonds had been employed by the City as manager of the swimming pool several years prior to the creation of the Commission, and the Commission re-employed Mrs. Hammonds as manager of the swimming pool at a salary of $50 per week, which is paid out of swimming pool funds. (These facts are contained in the uncontested affidavit of Charles Reynerson.)

In view of these undisputed facts, and assuming that defendant and its agents were guilty of negligence, the primary question before the Court is whether the swimming pool was being operated by

defendant in a governmental or a proprietary capacity.

In other jurisdictions there is a definite split of authority as to whether a municipality is liable in connection with the operation of a swimming pool. See Annotations, 57 A.L.R. 406; 51 A.L.R. 370.

The instant case, however, is governed by the Arkansas law. In this connection, plaintiff relies upon the following rule stated in City of Little Rock v. Holland, 184 Ark. 381, 384, 42 S.W.2d 383, 384:

"In that case [Collier v. Fort Smith, 73 Ark. 447, 84 S.W. 480, 68 L.R.A. 237] the court recognized the distinction 'between act and duties of a municipal corporation which are strictly public and governmental in their nature, and those of a private or quasi private nature.' It has been generally held that in the former there is no liability, whereas in the latter there is, and it was held that the management and control of highways by cities was of the former class."

The Court in the Holland case went on to hold that the City of Little Rock, in lighting its streets, public buildings and grounds, was engaged in a necessary governmental function.

On the other hand, defendant relies upon the case of Holt v. City of Texarkana, 168 Ark. 847, 271 S.W. 960, and similar cases as supporting its contention that the City is not liable. In Patterson v. City of Little Rock, 202 Ark. 189, 191, 149 S.W.2d 562, 563, the court said:

" * * * it has been held in many similar cases that the city in the operation of water works, electric light plants, sewer systems, etc., is engaged in a governmental function and that an action for damages, based on the negligence of its officers and agents, cannot be maintained. Browne v. [City of] Bentonville, 94 Ark. 80, 126 S.W. 93; [City of] Little Rock v. Holland, 184 Ark. 381,

42 S.W.2d 383; Hope v. Dodson, 166 Ark. 236, 266 S.W. 68; North Little Rock Water Co. v. Waterworks Commission of [City of] Little Rock, 199 Ark. 773, 136 S.W.2d 194."

See also, Springfield v. Carter, 8 Cir., 175 F.2d 914, 917.

The Court is of the opinion that the above cases are not controlling, but that the case of Yoes v. City of Fort Smith, 207 Ark. 694, 182 S.W.2d 683, is decisive of the question presented in the instant case. In the Yoes case the court, beginning at page 695 of 207 Ark., at page 683 of 182 S.W.2d, said:

"This case presents the question, whether municipal property has been so used as to lose its right of exemption from taxation under Art. XVI, Sec. 5, of the Arkansas Constitution. * * *

"Appellants cite Art. XVI, Sec. 5, of our Constitution, reading (as to what property is exempt from taxation), in part, as follows: 'Public property used exclusively for public purposes.' * * *

"II. The appellants contend that the swimming pool, bath house, concessions, and cottages below the dam, are not used for public purposes within the meaning of the Constitution, and are, therefore, taxable. * * *

"All the area below the dam was placed under the control of the Parks Board of the City of Ft. Smith; and has all the time been handled as a public park. The facilities are open to the public at large, and are patronized by the people of Crawford County, as well as by people from elsewhere. A small admission charge is made for use of the swimming-pool, in order to defray towel expense, etc.; cold drinks and sandwiches are sold by a concession; but from all of the admission charges and concession money, the city of Ft. Smith has never made any profit; in fact, it still lacks several hundred dollars of receiving back its original

outlay for towels. If any profit should ever be received, it will go back into maintenance, etc.

"We are convinced that the Chancery Court was entirely correct in finding that the area below the dam was in the nature of a public park, and maintained for public purposes. In Hope v. Dodson, 166 Ark. 236, 266 S.W. 68, Mr. Justice Hart, speaking for this Court, said: 'Public parks are essential to the health, comfort and pleasure of the citizens of a city. It is therefore generally held that public parks maintained at the public expense are within the terms of constitutional provisions exempting from taxation public property used for public purposes. * * *

"In Hannon v. [City of] Waterbury, 106 Conn. 13, 136 A. 876, 877, 57 A.L.R. 402, the Supreme Court of Errors of the State of Connecticut, held that a municipality was acting in its governmental capacity in operating a swimming pool, and the Court said: 'Public parks, playgrounds, swimming pools, and public baths or bathing houses are all examples of municipal functions undertaken for the public benefit, and, unless maintained for the corporate profit of the municipality are within the rule of governmental immunity. Bolster v. [City of] Lawrence, 225 Mass. 387, 114 N.E. 722, L.R.A.1917 B, 1285. The charge of a small fee covering a part of the cost of the maintenance of the pool in paying a supervisor, instructors, janitor service, and the like, while the municipality furnished the building, the swimming pool, the apparatus and equipment in connection therewith, the coal, electricity, water, chemicals, and other necessaries for the maintenance of the pool, did not except the maintenance of the pool from the rule of governmental immunity. The city was not deriving a profit from this small fee, the charge was a mere incident of the public service rendered in the performance of a governmental duty.'

"Without lengthening this opinion by the citation of other authorities, we conclude that the use of the property below the dam, as a swimming pool, bathhouse, and public park, did not destroy the status as tax-exempt property under Article XVI, Section 5 of our Constitution."

■ It is true that in the Yoes case the Arkansas Supreme Court was deciding a question of taxation, but the court cited and relied upon Connecticut and Massachusetts cases which were tort immunity cases. Moreover, even though the statements were dictum, they are binding on the court as being the Arkansas law. Standard Acc. Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794, 799; Forsgren v. Gillioz, D.C.W.D.Ark., 110 F.Supp. 647, 650; Fletcher v. Felker, D.C.W.D. Ark., 97 F.Supp. 755, 762.

In addition to the above it might be noted that Sec. 19–3601, Ark.Stats., provides that "Any city, town, county, school district, or any board thereof may operate a program of public recreation and playgrounds; acquire, equip and maintain land, buildings or other recreational facilities * * *."

Sec. 19–3606 provides that any city of the first or second class may create a commission or commissions to operate recreational parks. Sec. 19–3622 (1953 Supp.) provides that the commissioners:

"* * * shall have full and complete authority to build, manage, operate, maintain, and keep in a good state of repairs any municipal buildings deemed necessary to carry on a parks and recreation program for said municipality, including the building of swimming pools, * *."

Sec. 19–3628 provides, inter alia:

"* * * All funds derived from the use of said parks and recreation program shall be segregated into a Park Fund, which Fund shall be used exclusively in the operation of the parks and recreation program by the Commissioners."

In the instant case, the defendant in 1952 created a Commission as provided in Sec. 19–3606, Ark.Stats., supra, and the Commission has been operating the pool in accordance with the statutory provisions. And, factually speaking, the instant case resembles closely the Yoes case, since the city in each case made no profit but in fact incurred a deficit in operating a swimming pool.

■ The foregoing authorities convince the court that the swimming pool in the instant case was not being operated for a profit, and that under the Arkansas law it was being operated in a governmental capacity. It follows that defendant is entitled to governmental immunity and is not liable to the plaintiff herein.

■ Plaintiff's contention that the swimming pool was an attractive nuisance is clearly without merit. In the first place, the attractive nuisance doctrine is based upon negligence. See Missouri Pac. R. Co. v. Lester, 219 Ark. 413, 242 S.W.2d 714, 27 A.L.R.2d 1182; Garrett v. Arkansas Power & Light Co., 218 Ark. 575, 237 S.W.2d 895; Leflar, The Declining Defense of Contributory Negligence, 1 Ark.Law Review, 1, 7. And, as above stated, the defendant in the operation of the swimming pool is immune to tort liability based upon negligence. Furthermore, it is extremely doubtful whether the attractive nuisance doctrine could be applied to the operation of a public swimming pool. See, Warren v. City of Topeka, 125 Kan. 524, 265 P. 78, 57 A.L.R. 555; 65 C.J.S., Negligence, § 29(12), p. 476, footnote 98.

Plaintiff also contends that the City entered into a contract with the deceased and that the defendant breached the contract and is liable to plaintiff because of said breach. With regard to this contention, plaintiff relies upon the case of El Dorado v. Coats, 175 Ark. 289, 299 S.W. 355. In that case the court stated that a city council, in the exercise of its sovereignty, could contract as an individual and be bound accordingly. See also, Arkansas Valley Compress & Warehouse

Co. v. Morgan, 217 Ark. 161, 229 S.W.2d 133, 141, wherein the court said that:

"When a city makes contracts in its proprietary capacity, the city is bound the same as any private corporation or citizen would be."

In the Coats case, supra, the court was considering a franchise given by the city, under an ordinance, to J. W. Atkins for the erection and maintenance of a natural gas system in the City of El Dorado. In the Morgan case, the court was considering an express contract entered into with full observance to all legal requirements. In neither of the cases did the court consider the subject of implied contracts.

The plaintiff has cited no authority, nor has the court in its independent research found any authority, supporting plaintiff's contention as to an implied covenant or contract.

■ As a matter of fact, plaintiff's claim clearly is one in tort, and he cannot, by attempting to designate the action as being one in contract, avoid the effect of the rule granting immunity to municipalities in the discharge of their governmental functions.

Plaintiff's final contention is that the pool was not being operated in a governmental capacity since it was not open to all members of the public, i. e., it was limited to members of the Caucasian race. Plaintiff relies upon the case of Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, as implemented in 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

The Brown case does not support plaintiff's theory. To begin with, the Brown case involved the question of separate educational facilities and did not directly consider the question of segregation in swimming pools. Secondly, the final Brown decision was rendered after the death of the deceased herein.

■ In any event, the fact that members of the Negro race were excluded from the swimming pool would not, in itself, take the operation of the swimming pool out of the realm of govern-

mental function. For that matter, there are many governmental functions which inure to the benefit of a small percentage of the citizens.

From the above discussion it follows that there is no dispute as to the material facts and that defendant is entitled to a judgment as a matter of law. Therefore, a judgment should be entered dismissing plaintiff's complaint.