UNITED STATES of America,
Plaintiff,

v.

Curtis D. WHEELER, D. L. Martin, Paul
G. Goodwin, H. E. Epperson, G. A. La-
Gasse, and Amity Pulp Company, an
Arkansas Corporation, Defendants.

Civ. A. No. 706.

United States District Court
W. D. Arkansas,
Hot Springs Division.

May 1, 1958.

194

Chas. W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

Donald Poe, Waldron, Ark., for D. L. Martin.

Curtis D. Wheeler, Mt. Ida, Ark., pro se.

JOHN E. MILLER, District Judge.

The matter presently before the Court for determination is the motion of the United States for summary judgment in its favor against the defendants, Curtis D. Wheeler and D. L. Martin. As is necessary in such cases, the Court must determine whether there is a genuine issue as to any material fact and whether plaintiff is entitled to a summary judgment as a matter of law. Fed.Rules Civ. Proc. Rule 56, 28 U.S.C.A. In brief, plaintiff in its complaint alleges that it is now and has been for many years "the owner and in possession of the following described public lands and all timber thereon located, to-wit:

"The East Half of the Northeast Quarter, the Northwest Quarter of the Northeast Quarter and the Northeast Quarter of the Northwest Quarter, Section 1, Township 7 South, Range 25 West, situated in Pike County, Arkansas."

Plaintiff alleges in its complaint that during the period from September 1, 1955, to March 2, 1957, the defendants, Wheeler and Martin, willfully entered and trespassed upon plaintiff's land and willfully cut and removed from said public lands 163,741 bd. ft. of pine sawtimber, having a stumpage value of $4,-912.23, and 8,606 bd. ft. of hardwood sawtimber, having a stumpage value of $60.24. Plaintiff asserts that by reason of Sec. 50–105, Ark.Stats., it is entitled to recover treble damages from the said defendants. Plaintiff further alleges that the defendant Wheeler sold additional amounts of timber to various other parties.

On July 29, 1957, the defendant Wheeler filed his answer, denying that the United States owns the timber in question and denying that he willfully cut and removed timber from public lands.

On August 16, 1957, the defendant Wheeler filed an amended answer, setting forth in detail the elements of his defense. In substance, Wheeler alleges that the United States has no title to the timber in question; that said timber was owned by Detroit Timber and Lumber Co., and that Wheeler purchased said timber from the Detroit Timber and Lumber Co.

On September 5, 1957, the defendant Martin filed his answer admitting the matters of record pleaded by plaintiff, but denying that the United States is the owner of the timber and denying that he trespassed upon public lands or cut and removed timber from public lands. Martin further alleges that "the timber alleged to have been cut and converted by the defendant, D. L. Martin, was the timber D. L. Martin purchased from the owner, Curtis Wheeler, under contract of sale of timber, made and entered into on October 12, 1955, which contract has been furnished to plaintiff for examination and copying; and the plaintiff now has a copy of same."

On November 22, 1957, plaintiff filed certain requests for admission of facts, directing such requests to the defendants, Wheeler and Martin, as well as to other defendants not involved in the present motion. Neither Wheeler nor Martin responded to the requests for admissions. It is firmly established that the failure of a party to answer requests for admission of facts amounts in law to an admission of the truth of the re-

quested facts. Handley v. City of Hope, D.C.W.D.Ark., 137 F.Supp. 442; Heuer v. Basin Park Hotel and Resort, D.C. W.D.Ark., 114 F.Supp. 604; Sieb's Hatcheries, Inc., v. Lindley, D.C.W.D. Ark., 13 F.R.D. 113. As a matter of fact, it makes little difference in the instant case since most of the facts sought by the requests for admissions are matters of public record about which there could be no dispute.

The requests for admissions and exhibits thereto disclose the following undisputed facts:

On February 24, 1900, a patent was issued by the United States to John H. Scott, covering the NE¼ of Sec. 1, T 7 S, R 25 W of the 5th Principal Meridian in the State of Arkansas.

On the same date, a patent was issued by the United States to Robertson C. Gregory, covering the E½ of the NW¼; NE¼ of the SW¼; and the NW¼ of the SE¼; all being located in Sec. 1, T 7 S, R 25 W.

On April 13, 1900, John H. Scott conveyed to the Martin Alexander Lumber Company all of the timber and trees then standing and growing or being upon the NE¼ of Sec. 1, T 7 S, R 25 W. The lumber company was given full and free liberty of entry for the purpose of cutting and removing the timber and for constructing necessary facilities. The lumber company was obligated to pay Scott 50 cents per M feet of "lumber scale measure", and the sum of $407.70 was paid at the time of the execution of the agreement. Among other things, the agreement provided that:

"It is mutually agreed between the parties hereto that this contract shall continue in full force until all trees situated upon the said land shall have been converted into lumber or timber and removed therefrom with a right on the part of the said purchaser to maintain and operate any railroad or tram way built upon or across said premises by it for the period of ninety nine (99) years from date hereof and

that all other structures placed upon said premises by said purchaser shall remain its sole property and may be removed by it upon the termination of this lease or within one year thereafter."

On the same day, Robertson C. Gregory conveyed to the said Martin Alexander Lumber Company all the timber and trees then standing and growing or being upon the E½ of the NW¼; NE¼ of the SW¼; and the NW¼ of the SE¼, Sec. 1, T 7 S, R 25 W. This agreement contained the same provisions as the Scott agreement with respect to price, removal of timber, etc.

On May 2, 1901, the Martin Alexander Lumber Co. conveyed to the Detroit Timber and Lumber Co. all the yellow pine timber on certain tracts of land, including the NE¼ of Sec. 1, and the E½ of the NW¼ of Sec. 1, T 7 S, R 25 W. The agreement provides that Detroit Timber and Lumber Co. and its assigns should have the number of years shown in each contract and deed to Martin Alexander Lumber Co. in which to cut and remove the timber.

Sometime prior to July 31, 1903, the United States brought an action against the Detroit Timber and Lumber Co. and others to cancel patents to certain lands, including the patents of Scott and Gregory above referred to. The United States also sought an injunction against the Detroit Timber and Lumber Co. to prohibit said company from removing timber from the land. On July 31, 1903, the Circuit Court for the Western District of Arkansas, Texarkana Division, held that the patents were valid and dismissed the suit of the United States for want of equity. United States v. Detroit Timber & Lumber Co., 124 F. 393. The case was appealed to the Circuit Court of Appeals for the Eighth Circuit, and on July 28, 1904, the Court of Appeals reversed the decision of the lower court. The Court of Appeals held that the patents in question (Gregory's and Scott's, among others) should be set aside and voided, but that Detroit Timber and Lumber Co. was an innocent

purchaser of the timber and had the right to remove it according to the provisions of the timber contracts. United States v. Detroit Timber & Lumber Co., 8 Cir., 131 F. 668. The decision of the Court of Appeals was affirmed on February 19, 1906, by the Supreme Court. United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499.

On April 30, 1906, the Detroit Timber and Lumber Co. conveyed to the Pike County Lumber Co. all of the timber on certain tracts of land, including the NE¼ and the E½ of the NW¼ of Sec. 1, T 7 S, R 25 W. Pike County Lumber Co. was given the right to remove the timber "according to the terms of certain timber contracts made by certain entrymen and entrywomen under whom the Grantor Company holds and which right of removal is in pursuance of the decision and Judgment of the United States Circuit Court of Appeals for the Eighth Circuit in the case number 2009 of the U. S. against Detroit Timber and Lumber Company and others, which decision of the said Circuit Court of Appeals was affirmed by the Supreme Court of the United States on the 19th day of February, 1906."

On July 9, 1906, the United States Circuit Court, Texarkana Division, Western District of Arkansas, entered a nunc pro tunc order (which should have been entered May 24, 1906) declaring the patents to Scott and Gregory to be null and void and canceling said patents, subject to the right and title of Detroit Timber and Lumber Co. to the timber on said land and to entry upon the land for the purpose of removing the timber in accordance with the timber deeds executed by the entrymen to Martin Alexander Lumber Co. and assigned by said company to Detroit Timber and Lumber Co. This order was entered in accordance with the mandate of the Supreme Court of the United States. On March 28, 1908, the name of Detroit Timber and Lumber Co. was changed to Detroit Timber Co.

On April 23, 1909, the Pike County Lumber Co. conveyed to the Ozan Lumber Co. all the timber on certain tracts of land including the NE¼ and the E½ of the NW¼, Sec. 1, T 7 S, R 25 W. Ozan Lumber Co. was given the right to remove the timber "according to the terms of certain timber contracts made by certain entrymen and entrywomen from whom Detroit Timber and Lumber Co. derived title to said timber."

On December 22, 1912, the Detroit Timber Co. was dissolved.

On December 20, 1915, the Ozan Lumber Co. conveyed to Ozan-Graysonia Lumber Co. all its right, title and interest to the timber growing, being, and standing on certain lands, including the NE¼ and the NE¼ of the NW¼ of Sec. 1, T 7 S, R 25 W. This agreement was subject to "the limitations contained in the conveyance of said 'timber rights' to the said Ozan Lumber Co., its grantors and assignors." Ozan-Graysonia Lumber Co. expressly assumed the payment of taxes on the timber rights for the year 1915 and subsequent years.

The records of the Pike County tax assessor show the lands herein involved in the name of the United States. The boundary lines of said lands had been run and painted prior to August 1955 by plaintiff or its agents.

According to the tax assessment and tax collection records of Pike County, Arkansas, the standing and growing timber on the lands herein involved have not been assessed for taxes nor have taxes been paid thereon for the years from 1919 to date, except for an assessment by the defendant Wheeler in 1956.

The deed records of Pike County, Arkansas, contain no instrument of record indicating that the Ozan-Graysonia Lumber Co. has conveyed or sold the timber on the lands involved herein.

The sole claim of the defendant Wheeler is based upon a purported agreement dated August 17, 1955, between Detroit Timber and Lumber Co. and Wheeler, which agreement provides that for a con-

sideration of $1,000 Detroit conveys to Wheeler all merchantable timber on the E½ of the NE¼; NW¼ of the NE¼; and the NE¼ of the NW¼, Sec. 1, T 7 S, R 25 W. The purported agreement is signed on behalf of Detroit Timber and Lumber Co. by L. M. Thorson and C. N. Smith.

The defendant Wheeler does not have possession of the original copy of said agreement and has no knowledge of its present location.

Plaintiff has never given Wheeler authority or consent to cut and remove standing and growing timber from the lands in question.

On February 7, 1958, plaintiff filed additional requests for admissions of facts directed to the defendant Wheeler. Wheeler made no response to the requests, and thus the requests stand admitted. These requests establish that between September 1, 1955, and March 2, 1957, Wheeler sold to D. L. Martin 163,741 bd. ft. of pine sawtimber at $30 per M and 8,606 bd. ft. of hardwood sawtimber at $7 per M; that during the same period Wheeler sold to Paul Goodwin 143.27 cords of pine pulpwood at $5.50 per cord; that Wheeler sold to Milton Massey, d/b/a Massey Pulpwood Company, 71.29 cords of pine pulpwood at $4 per cord; that Wheeler sold to H. E. Epperson 34.30 cords of pine pulpwood at $5 per cord; that Wheeler sold to G. A. LaGasse 3.33 cords white oak stave bolts at $30.00 per cord; and that all of the above-mentioned timber was cut and removed from the lands here in question. Wheeler received payment for the timber from the said purchasers.

When the above-mentioned undisputed facts are considered in the light of the governing law it becomes quite clear that plaintiff is entitled to a summary judgment against the defendants, Wheeler and Martin, in the instant case.

To begin with, it is apparent from the record that the defendant Wheeler owns absolutely no interest in the timber or the lands in question. In the first place, the corporation, Detroit Timber and Lumber Co., from which he purportedly obtained his interest in the timber, has long since been dissolved and out of existence. Secondly, before the Detroit Timber and Lumber Co. was dissolved it conveyed its interest in the timber to Pike County Lumber Co. The latter company conveyed the timber to Ozan Lumber Co., and it was then conveyed by Ozan to Ozan-Graysonia Lumber Co. Thus, at the present time Ozan-Graysonia Lumber Co. is the only party who could possibly have any interest in the timber, other than the United States.

The plaintiff, however, cannot recover upon the weakness of Wheeler's title but must recover, if at all, upon the strength of its own title.

Unquestionably the United States owns the fee title to the lands herein involved, since the original patents to the entrymen, Scott and Gregory, were declared null and void and set aside under the mandate of the Supreme Court of the United States. The remaining question is whether the United States owned the timber on said lands at the time it was cut and removed by Wheeler.

The original timber conveyances from Scott and Gregory to Martin Alexander Lumber Co. gave the latter the right to enter upon the land and cut and remove the timber. In that portion of the agreements nothing was said as to the time granted the lumber company in which to accomplish its purpose. In the latter part of the agreements the lumber company was specifically given the right to maintain and operate a railroad or tramway upon or across the premises for a period of 99 years.

The United States contends that the 99-year provision applied only to the railroad or tramway and that the agreements were silent as to the time in which the timber was to be removed. To the contrary, the defendant Wheeler contends that the purchaser had 99 years in which to remove the timber.

Where a conveyance of timber specifies no time for its removal, the purchaser merely has a terminable estate in the timber which ends when a reasonable time for removal of the timber has ex-

pired; if the timber is not seasonably removed, it becomes the property of the owner of the fee as a part of the land. Ozan-Graysonia Lumber Co. v. Swearingen, 168 Ark. 595, 271 S.W. 6. To the same effect, see Dunn v. Forrester, 181 Ark. 696, 27 S.W.2d 1005; Garden City Stave & Heading Co. v. Sims, 84 Ark. 603, 106 S.W. 959; Annotation, 164 A.L.R. 423.

■ But assuming, without deciding, that the agreements permitted the Martin Alexander Lumber Co. and its assigns a full 99 years in which to remove the timber, defendants would be in no better position in the instant case. This is true since the timber rights have long since been abandoned by the last owner, Ozan-Graysonia Lumber Co. In this connection the rule is stated in Kunst v. Mabie, 72 W.Va. 202, 77 S.E. 987, 990, as follows:

■ "The purchase of the timber, with right to cut and remove it in a limited time, creates a chattel real; it is not a corporeal hereditament, and may therefore be lost to the owner by abandonment, like a lease for a term of years.

■ "Legal abandonment is largely a matter of intention. But intention is generally proved by subsequent acts. The purpose is generally conceived before the act is performed, and is seldom declared in advance of it. Hence the intentions of men generally have to be determined by their acts. Intention to abandon, coupled with a surrender of possession, or what is equivalent thereto, constitutes legal abandonment."

See also, 54 C.J.S. Logs and Logging § 24, p. 718.

■ One factor which bears great weight in the determination of abandonment is the payment or nonpayment of taxes on the timber rights. See, Hilyard v. Engel, 123 Mont. 20, 209 P.2d 895. Under the Arkansas law, where timber rights are held separately, they are required to be assessed separately. Sec. 84–203, Ark.Stats. In the instant case it is established that neither Ozan-Graysonia Lumber Co., nor anyone else, has assessed or paid taxes on the timber on the lands in question since 1919, except for one assessment by the defendant Wheeler in 1956. It should also be noted that when Ozan-Graysonia Lumber Co. purchased the timber rights from Ozan Lumber Co., Ozan-Graysonia specifically assumed the obligation of paying the taxes on the timber rights.

The failure of Ozan-Graysonia Lumber Co. to make any effort to cut or remove the timber in question and the failure of said company to assess or pay taxes on the timber for a period of approximately 40 years clearly establishes an abandonment of the timber rights by said company. Under the law title to the timber reverts to the owner of the fee, the United States.

The defendant Wheeler had no right, permission, or authority from the United States to cut and remove the timber and is, therefore, liable to the United States for the value of the timber thus removed. The value of the timber is shown by plaintiff's request for admission of facts dated February 7, 1958 (which Wheeler did not answer), to be $6,317.01. And the United States is entitled to a judgment against the defendant, Curtis D. Wheeler, in said amount.

■ The record is not sufficient, however, to establish the amount of the judgment which should be entered against the defendant, D. L. Martin. The request for admission of facts of February 7, 1958, relating to the sale of timber by Wheeler to various parties, including Martin, was directed only to Wheeler and not to Martin. Therefore, these requests, which stand admitted as a matter of law as to Wheeler, are not binding upon the defendant Martin. It follows that the Court cannot determine the amount of the liability, if any, of Martin to the United States upon the present record.

■ The Government also contends that it is entitled to treble damages under the provisions of Sec. 50–105, Ark.Stats. The Court is of the opinion that treble

damages cannot be assessed upon the basis of the present record. Attached to the defendant Wheeler's amended answer is a copy of a registered letter, dated May 31, 1955, from the Chief, Lands Unit, Adjudication Section, Department of the Interior, to Curtis D. Wheeler. This letter indicates that the Government did not own the timber and that it was owned by Detroit Timber and Lumber Co. In view of this letter and the purported sale by Detroit Timber and Lumber Co. of the timber to Wheeler, the Court is unable to say as a matter of law that Wheeler's cutting and removing of the timber was sufficient to subject him to treble damages.

In accordance with the above a summary judgment should be entered in favor of the plaintiff and against the defendant, Curtis D. Wheeler, in the sum of $6,317.01. Plaintiff's motion for summary judgment against the defendant, D. L. Martin, should be overruled with the right of the plaintiff to renew the motion in the event the amount of timber, if any, purchased by Martin from Wheeler can be established without dispute.